## BOURS *et al. v.* ZACHARIAH AND WIFE.

The certificate of acknowledgment of a Notary Public to a deed is not an act *in pais,* which he may exercise by virtue of his office at any time while in office.
A Notary derives his power to take and certify acknowledgments to deeds from the statute. He acts as under a special commission for that particular case—clothed with limited statutory power. He is to take the acknowledgment, and certify it as part of the same transaction. After taking the acknowledgment, and making and delivering the return, his functions cease, and he is discharged from all further authority, and cannot alter or amend his certificate.

APPEAL from the District Court of the Fifth Judicial District, County of San Joaquin.

This was a cross action to a bill to foreclose a mortgage. The facts are as follows:

The defendants, Zachariah and wife, executed and delivered to the plaintiffs two separate promissory notes, and two mortgages of different dates to secure the payment of the notes. The first mortgage was to secure the payment of $1,000, and the second of $2,000. On the twelfth day of July, 1854, the first mortgage was acknowledged before a Notary Public, who entered the following certificate thereon:

" STATE OF CALIFORNIA, ⎱
    County of San Joaquin. ⎰

" On this twelfth day of July, A. D. 1854, before me, came J. Zachariah, and M. A. Zachariah, his wife, to me known to be the individuals described in and who executed the within instrument, and acknowledged that they executed the same of their own free act and deed, and for the purposes therein mentioned; and M. A. Zachariah, being examined by me, after being made acquainted with the contents of this instrument, did acknowledge to me that she executed the same freely and voluntarily, and that she does not now wish to retract the execution of the same.

[ L. S.] In witness whereof, I have hereunto set my hand and affixed my official seal, the day and year above written.
                                    " J. G. JENKINS, Notary Public,
                                        " San Joaquin County."

18

After the endorsement of this certificate on the mortgage, it was delivered by the Notary to the plaintiffs, who had the same recorded on the eighteenth day of July following. Subsequently, the plaintiffs becoming satisfied that the certificate of acknowledgment was defective, again presented the mortgage to the Notary, who endorsed a second certificate thereon in the form prescribed by law, which was also recorded on the fourteenth day of December, 1854.

The second mortgage was acknowledged before another Notary, on the twenty-third day of August, 1854, and he endorsed thereon the following certificate :

" STATE OF CALIFORNIA, }
   County of San Joaquin. }

" On this twenty-third day of August, A. D. 1854, before me, came J. Zachariah and M. A. Zachariah, to me known to be the individuals described in and who executed the within instrument, and acknowledged that they executed the same of their own free act and deed, and for the purposes therein mentioned.

[ L. S.]   In witness whereof, I have hereunto set my hand and affixed my official seal, the day and year above written.

                     " B. G. WIER, Notary Public."

This mortgage was also delivered to the plaintiffs, and they had the same recorded. After it was recorded, at the request of the plaintiffs, the Notary endorsed a second certificate thereon, which was also recorded.

The defendants set up a right of homestead in a portion of the mortgaged premises, insisting that the original certificates of acknowledgment could not be amended *nunc pro tunc.* The defendants had judgment, and the plaintiffs appealed.

The only question in this case is, whether a Notary Public or other officer, taking the acknowledgment of a married woman, and making an erroneous certificate of such acknowledgment, could be permitted, during his continuance in office, but *after* the deed has passed from his possession, to correct the mistake and make the certificate conform to the facts as they originally existed.

*A. C. Baine* for Appellants.

On behalf of the appellants, we insist that the Notaries who took the acknowledgment of Mrs. Zachariah had the right to correct their certificates of her acknowledgment, so as to make them conform to the facts ; and that such correction and amendment was done and made by the endorsement of the other certificates on the mortgages, by the Notaries, during their term of office.

The certificate of acknowledgment of a conveyance is an act " *in pais*," which may be corrected or amended by the officer who made it, at any time during the term of his office. (Jordan *v.* Corey, 2 Carter, Ind. R. 385 ; Elwood *v.* Block, 13 Barb. Sup. C. Rep. 50 ; and see 3 S. & M. Rep. 364.)

The case of Jordan *v.* Corey drew in question the validity of a deed, in the execution of which three married women had joined with their husbands in conveying lands in which the wives had an interest by descent. The certificate was defective in not stating that the wives were examined by the officer without the hearing of their husbands. Upon the question whether the officer who took the acknowledgment should be permitted to amend the certificate, on the trial in the Court below, the Court, by Judge Blackford, says : " We think the officers had the right, and indeed, that it was their duty to correct at any time any mistake in their certificate." The certificate of the officer is but a written statement of his official acts in taking the acknowledgment, which our statute requires the officer to make on, or attach to the instrument ; but our statute is not imperative as to the time when it must be done. Nor does the certificate, when made, become matter of *record* and conclusive, but simply " *prima facie* " evidence of the facts therein stated. (Comp. Laws of Cal., page 518, sec. 31.)

Why may not a mistake in this certificate be corrected by the officer who made it, during his term of office, as well as the certificate of a Sheriff of his official acts, after they have been endorsed by him ?

The cases relied on in the Court below, by the respondents, are distinguishable from this. The decision in Elliott *v.* Piersoll, 1 Peters R. 338, was controlled by a statute of Virginia, which the Court said " was in force in Kentucky," and which required in express terms a record of her acknowledgment to make a deed binding upon a *femme*

*covert* and her heirs.   The acknowledgment, certificate and recording became part and parcel of the instrument, and necessary to its validity as a deed, between the parties thereto.   But see Tucker's Commentaries, vol. 1, page 268, where it is said that " that statute refers to acknowledgments taken in open Court, and which were omitted to be entered on the record of proceedings, and not to acknowledgments before Justices " *in pais.*"

So with the cases to be found in the Connecticut Reports, of which the case of Pendleton *v.* Burton is a leading one : in it the Court says : " It is provided by statute that no deed shall be accounted complete in law to convey real estate, but such as is *written, witnessed,* acknowledged and recorded, the acknowledgment to be recorded must be in writing, and such is the invariable practice."   In these cases as in Elliott *v.* Piersoll, the decision turns upon the statutory provision, making it essential to the validity of an instrument as a conveyance between the parties to it, that it should be acknowledged and *recorded.* The due recordation (which could not be legally done without a proper certificate) of the instrument being the last of a series of acts necessary to constitute the *deed,* must have the *assent of* the *grantor to it,* as much so as any other one of the acts constituting the deed.   But could it be said, if the Recorder, in endorsing his certificate of record on such a deed, should make a mistake, that the Recorder could not correct it ?   We apprehend not.

Under our statute, the recording of a deed is not essential to its validity in any case, as between the parties.   (Comp. Laws of Cal. p. 516 ; sec. 19, p. 517 ; sec. 24 ;   Hastings *v.* The City of Benicia, 5 Cal. R. 315.

There is no obligation resting on the mortgagee to have his mortgage recorded.   (Rose *v.* Munie, 4 Cal. R. 173.)   The facts—that the recording of the mortgages in this case is not essential to their validity between the parties, and that the mortgagees were under no obligation to record their mortgages—distinguish this case from Elliott *v.* Piersoll and the cases in the Connecticut Reports.   And the act of spreading the mortgages upon the book of records in the Recorder's office of the county was nugatory, and had no effect one way or the other upon the rights or liabilities of the parties thereto ; nor upon

Bours *v.* Zachariah and Wife.

the right—yea, the duty—of the Notaries to correct the mistake they made in their certificates of their official acts, in taking the acknowledgment of Mrs. M. A. Zachariah.   These corrections were made in the other certificates endorsed on the mortgages by the officers who made the first, during the term of their office ; and the facts therein stated not being contradicted by any evidence adduced on the part of the respondents, are proof of the execution and due acknowledgment of the mortgages in question by Mrs. M. A. Zachariah.

There is no provision in that statute requiring the *acknowledgment to be certified* or the mortgage to be recorded, to defeat this homestead exemption right.   The Court can require no other act to give validity to the wife's waiver of her exemption right than the statute specifies. She conveyed no title by the mortgages, for she had none in the land, and claims none except under the Homestead Act.   Section 15 of article 10 of the Constitution only authorizes the *exemption* from *forced sale* of the *homestead* and *other property*.   It does not authorize the change of title of property by legislative enactment.   Hence, Mrs. Zachariah conveyed no title by the mortgages, but assented to the mortgages of her husband, and assented thereto in the manner required by statute to waive her exemption right, *viz :* by signing and duly acknowledging them separately and apart from her husband.   Will the Court go beyond the statute, and impose the further condition, and say that the acknowledgment must be *certified*, and *certified at the time*, and that too beyond the power of the officer to correct a mistake that he might make in the *certificate ?* and this, not to pass title to real estate from her, but merely her *assent* to the act of her husband.

*Thos. Sunderland* for Respondents.

The Appellants contend that the Notary had a right, and that it was his duty to correct the certificate after it had been recorded ; and they cite and rely entirely on the case of Jordan *v.* Corey, 2 Carter Ind. Rep., in support of said position.

It is therefore necessary to examine the case with some attention.

The nature of the action, the facts in the case, and the points decided, were all radically and essentially different from the case now before this Court.

It bears indeed but a slight analogy to this case ; and the only point in which it does resemble it, is more in the nature of a collateral issue, than in the substance of the action.

The action was not for the foreclosure of a mortgage, but was assumpsit on a promissory note.   The note had been given for purchase money of land, with covenants of warranty.

The defense set up was, that the title to three-tenths of the land bought was defective, and therefore the note was without consideration, *pro tanto.*

The question about the validity of the conveyance of the married women, and the regularity of the acknowledgement, and the power of the Notary to amend the certificate, all came up collaterally.

The married women, themselves, were not before the Court, claiming the property and relying on the defective execution and acknowledgements and certificate.

It does not appear that there had been any eviction of defendants, and the Court might, perhaps equitably, have allowed an amendment in order to make the consideration for the note free from the difficulty set up.

But in this State, and by the rulings of this Court, no such defense could have been set up or allowed.   No question about the validity of the acknowledgment could have been made, as long as the party remained in possession.

In Jackson *v.* Norton, 5 Cal. Rep. 262, it was held that the promise to pay and the warranty were independent covenants, and that until an eviction, the purchaser could not resist the payment of the purchase money ; nor could he claim a *pro rata* deduction for a failure of title for part of the land sold.

It is now contended that if this case could be considered an authority on the question, that in one material respect it supports and sustains the case of respondents.   In this respect it agrees with the decisions of other Courts.

In all other respects it is unsupported by any authority ; it is inconsistent with, and repugnant to itself ; it totally misapplies and perverts the case of Elliott *v.* Piersoll, which is cited to sustain it, and the principal points decided have been ruled directly contrary, not only by

some of the most respectable of the State Courts, but by the Supreme Court of the United States.

Let us now analyze this case of Jordan v. Corey more minutely :

1st. There was no proof that the deeds had ever *been recorded;* and from the language of the case as reported, and the reasoning of the Court in rendering its decision, it would seem that they had *not* been recorded at the time of trial; nor is the opinion of the Court consistent with a different hypothesis.   The plaintiff offered to prove at the trial that the acknowledgments were taken correctly in point of fact, but that, by a mistake, the officer had omitted to certify it correctly.

In the case now before the Court, there was no proof of any mistake, and no motion made at the trial to be allowed to amend the certificate.

The case of Jordan v. Corey was reversed solely on the ground that proof of a mistake should have been received, and the officer allowed to amend the certificate *nunc pro tunc.*

In this case there is no such error alleged, and there is no such ground of reversal.

In Jordan v. Corey it was not pretended that the officer had power to affix a *new certificate* at the request of the grantee ; but only that he might *amend the old one,* on proving, in open Court, that there was a *mistake in it.*

In this case the appellants rely entirely on the second certificate, made six months after the mortgages had been recorded, to contradict the first certificate, made at the time of acknowledgment and before the recording thereof.

2d. The case of Jordan v. Corey, as far as it is a sound authority, is in favor of the respondents.   The Court, on page 387, says:

" There can be no doubt that the certificate of the acknowledgment of a married woman as to her execution of a deed, must show by the facts stated in it, that she had been examined in the manner prescribed by the statute, or the deed as to her will not be valid.   The certificates in question are defective for not showing that the married women were examined without the hearing of their husbands."

According to this, both the acknowledgment and certificate are a

necessary part of the deed, and without which the deed will not be valid. The certificate was defective in one point, precisely as this certificate is, and the Court held, that as to the wife the conveyance would *be void.*

3d. The case of Jordan *v.* Corey is inconsistent and repugnant to itself. Whilst it decides that the certificate itself must show all the facts, it also holds that all the facts may be proven by parol evidence. Now, if one material fact, without which the certificate would be invalid, can be shown by parol evidence, why could not all the facts be made out in the same way ?

The certificate in Jordan *v.* Corey did *not* state the material fact of an examination separate and apart from and without the hearing of the husband. The way the difficulty was gotten rid of was to allow the officer to prove that it was a *mistake,* and to correct it. If he could correct a mistake in this respect, he might in all other respects. He might, in fact, if there had been no certificate at all, have made out by parol evidence that there had been an acknowledgment, but that he had omitted or forgotten to certify the same.

Is not such a ruling in direct violation of the fundamental law of evidence, that written instruments cannot be altered by parol evidence ? Is it not clearly manifest, that if a certificate to a formal written instrument can be altered by having words or sentences interpolated into it by showing a mistake, that this is allowing *written* evidence to be altered by *parol* evidence?

4th. The case of Jordan *v.* Corey is not supported by any authority, and is overwhelmed by opposing authority. In Elwood *v.* Klock, above cited, page 55, 13 Barb., (and a junior decision by two years) the Court says :

" I think the conveyance by a married woman can only become operative upon her private examination before a proper officer, duly certified by him ; and that it cannot be established by parol evidence. A deed duly acknowledged may be read in evidence, without further evidence of its execution. But I apprehend, if the certificate omitted to state essential facts; as for instance, that the officer knew the grantor; that it could not be helped out by evidence of the fact omitted, so as to entitle the deed to be read in evidence in virtue of the

certificate thus forfeited.    The acknowledgment is a nullity unless properly certified."

The slightest examination of the case of Elliott *v.* Piersoll, 1 Pet. 328, will show that it is *directly contrary* to the doctrine laid down in Jordan *v.* Corey.

The Court says, page 341 : " Had the Clerk the authority to alter the record of the certificate of the acknowledgment of the deed at any time after the record was made ?    We are of the opinion *he had not.*"

But the Court, in the case of Jordan *v.* Corey, cited this case as an authority for saying he *had.*    A more palpable and outrageous perversion of an authority cannot be found in all judicial annals than this.

The same doctrine was held by the Supreme Court of Connecticut in the case of Stanton *v.* Button, 2 Cow. 527.

The Court says : " A deed of land without a proper certificate of parties' acknowledgment, is inadmissible as evidence of title."

" An omission in the certificate cannot be supported by intendment or construction."

In the case of Pendleton *v.* Button, 3 Conn. 406, the Court says : " The acknowledgment of a deed must appear on the deed, and cannot be proved by parol evidence."

This is a leading case, and has been followed in numerous cases in the same Court.    (See note at bottom of pages.)

Again, in the case of Hayden *v.* Westcott, 11 Conn. 129, the Court says : " The acknowledgment of the deed must appear *on the deed;* and no defect in the certificate can be helped by *parol evidence.*"

The same doctrine has been held in numerous cases by the Supreme Court of Pennsylvania.

The case of Watson *v.* Bailey, 1 Binn. 470, is the leading case ; Evans *v.* Commonwealth, 4 Sergeant & Rawle, 271 ; 6th Sergeant & Rawle, 48, Watson *v.* Mercer.

Another important case decided by the same Court is that of Jordan *v.* Jordan, 9 Serg. & R. 270.

This was a defective acknowledgment in the same point.    As in this case, there was no separate examination of the wife ; or if there was, the certificate of the magistrate did not show that fact.    They offered at the trial to prove by the *magistrate* that there was such privy

examination.   The evidence was excluded at the trial, and held inadmissible.

On appeal, the Supreme Court says : " The Act directs the examination of the wife to be separate and apart from the husband ; and that they were separate must appear on the face of the certificate, and not otherwise.   I am, therefore, of opinion that the certificate of acknowledgment was defective.   But it was attempted to supply the defect by parol evidence of the magistrate before whom the acknowledgment was made."

" The evidence was also rejected, and in my opinion with great propriety."

" There would be no certainty in titles if this kind of evidence was permitted."

The case of Elwood v. Klock, 13 Barbour, cited by the appellants, contains no such doctrine as they contend for, but directly the contrary.

The case from the 3d Smed. & Marsh. 364, cited by appellants, was in respect to a notarial protest on a *promissory note*, and has not the most remote application to this case.

The next case relied on by appellants is that of Hastings v. City of Benicia, 5 Cal. Rep. 315.   In this the rights of a *married woman* were not involved.

The case was first decided at the January Term, 1858—Justice BURNETT delivering the opinion of the Court, and FIELD, J., concurring. The opinion of the Court at that term was to the effect, that where the rights of third parties had not attached, the officer making the certificate of acknowledgment might correct a mistake in his certificate at any time during his continuance in office.   At the subsequent October Term a reargument was had, and the Court rendered the following opinion—BALDWIN, J., delivering the opinion of the Court—FIELD, J., concurring.

This controversy involves a lot of land claimed as a homestead by the wife, and the validity of which claim rests upon a single question raised by a single fact.   The question is as to the power of a Notary

Public, who has taken the acknowledgment of the wife to a deed for land; made a certificate on the deed; and after the deed and certificate have passed from him and been recorded, to make and record a new certificate of acknowledgment—the first being fatally defective. The fact in connection with this principle is, that defendants, Zachariah and wife, made a paper, in form a mortgage, on a lot in Stockton, the homestead of these parties, to secure a debt due by Zachariah to the plaintiff below. This paper purports to have been acknowledged by the female defendant before one Weir, a Notary Public, about the time of its date; and a certificate of her acknowledgment is endorsed, by the officer, on the deed. But this certificate omits to state the fact that the wife was examined separately and apart from her husband and out of his hearing, and further, that in such examination she acknowledged that she executed the same freely and voluntarily, without fear or compulsion, or under undue influence of her husband, and that she did not wish to retract the execution of the same. Some six months afterwards a new certificate was made by the officer, and recorded.

It is not necessary to go into a review of the long list of cases which, in this State and elsewhere, hold the necessity of a compliance with all the substantial requirements of the Act regulating the manner of conveyances by married women, in order to give validity to such acts. The law, knowing the necessity of strictly guarding the wife from the influence of the husband, as indispensable to the existence of such a thing as a separate estate or a right of property in her, has, by a uniform and consistent policy, thrown safeguards around the acts of disposition of such estate, and exacted a strict respect to them. Our statute is explicit in this regard. The wife is protected from the influence of the husband and secured in the enjoyment of the freedom of her will, by the provision that she is to be examined by the officer apart from her husband, and that the officer shall state this fact in his certificate. It is contended, however, that this certificate may, when completed and recorded, and after it has left the hands of the officer, be altered or amended, or an entirely new certificate be made, and this, we presume—for we see no limitation to the principle—at any distance of time, at least, so long as he continues in office. The statute seems to contemplate but one certificate. It speaks of but one. That cer-

tificate is evidence for certain purposes ; but what would be the effect if several certificates were allowed, some qualifying or contradicting the rest, might not be so easy to determine. If two could be given, why not a dozen ?—if within six months, why not within six years ? If the certificate amendatory of the former—why not in contradiction of it—denying all acknowledgment of the deed ? If in respect to one class of deeds, why not to all ? And what would this lead to, but the putting all land titles in the power of unscrupulous Notaries, or leaving them to the mercy of their memories ? These certainly are serious questions. We should have some very strong reasons or weighty authorities to sustain a proposition out of which such results may grow. We have been furnished with only two cases which seem to approach the principle contended for by the appellants. This, itself, is no inconsiderable argument against the pretension. Very many controversies have grown out of the alleged defective acknowledgments, and most of these have been, perhaps, in consequence of misprision or fault of the Notaries, or other officers certifying. Some of these have been hard cases upon purchasers. The rights of the wife have often, indeed, in most of the cases, been recognized and maintained. If the sense of the profession and the Bench had not been decidedly against the power of the officer to amend the certificate, it is very strange that the attempt had not been made to amend it; especially, as will be shown hereafter, as it has been frequently attempted to prove the facts omitted by parol ; and that, too, by the evidence of the Notary. By how much speedier a process could all this have been effected, if a Notary's certificate could at once have been amended, or a new one made out.

The ground upon which the power in question is rested is, that the certificate of a Notary is an act, *in pais,* which he may exercise by virtue of his office, and at any time while in office ; and that the amending of his acts is in pursuance of the same general authority which enables him to do them. But we think this is not correct. A Notary derives his power from the statute over these subjects. The special duty and authority of taking and certifying acknowledgments is given him. But he acts as an officer with a special authority for each particular case. He is, in other words, acting as under a special commission for that case—clothed with a limited statutory power. He is

to take the acknowledgment, and certify it, as parts of the same transaction.    After taking the acknowledgement and making and delivering the return, his functions cease, and he is discharged from all further authority.    He has exhausted his whole power over the subject, as much as a special commissioner created for a particular purpose after the adjournment; or a Court, after the lapse of the term.    If we were to look to analogies, we see nothing which upholds this pretension. If, as in some of the States, particular officers clothed with authority to take depositions, return them to Court, it would scarcely be contended they had the power, months afterwards, to amend them, or to make return of new facts not appearing on the return, when they closed the commission; nor could any other officer, except by virtue of some statutory power, after he had made return of his proceedings; nor officers charged with special inquisitions.

Elwood *v*. Block (13 Barb., S. C. R. 50) is a case not dissimilar to this, both in the facts and principles involved.    Mrs. Elwood executed a quitclaim of the premises in dispute, but the acknowledgment was defective in the same respect as this mortgage.    On the trial below, the defendant offered the Commissioner to prove—and he did—that he took the acknowledgment of Mrs. Elwood, and that the same was done in compliance with the provisions of the statute.    The admissibility of this proof was the matter before the Court on appeal.    The Court reviews the statutes of New York on this subject, and shows the various changes made in them.    By the Act of 1771, it was provided that no estate of a *femme covert* should pass by her deed without a previous acknowledgment, made by her apart from her husband, and a certificate thereof purporting that she had been examined privately, endorsed on the deed, and signed by the officer, etc.    The same provision was re-enacted in 1788, in 1801, and 1813.    The Court says that, in the revision of the laws in 1830, the same provision was substantially re-enacted.    That statute is given, which is almost identically the same as ours.    It provides that no estate of a married woman shall pass by any conveyance not acknowledged as required by the Act; and that the officer who shall take acknowledgments shall endorse a certificate thereof, signed by himself, on the conveyance ; and in such certificate shall set forth the matters therein before required to be done.

The Court then proceeds: " The statute still looks to the certificate as containing the evidence that its requirements have been complied with, to enable the deed to become operative. The execution of a deed by one not under disabilities may operate to pass an estate, without an acknowledgment, and the execution may be proved by any competent evidence. Not so of a deed of a *femme covert*. No estate passes, except the conveyance is acknowledged as required by law. The disabilities of the wife are only removed by a strict compliance with the statute. As no deed can be recorded except upon a proper certificate of acknowledgment, a deed of a *femme covert* cannot take effect for any purpose except upon a like certificate. A deed cannot be recorded upon parol proof of its proper acknowledgment; neither can the estate of a married woman pass by parol evidence of an acknowledgment of the execution. If the acknowledgment can be established by the examination of the officer as a witness, years after the transaction, it may be established by the testimony of any other credible witness who may have knowledge of it, and perhaps by the admission of the wife herself to a third person that the requirements of the statute had been complied with; thus substituting parol evidence, or verbal admission, for the solemn and formal written evidence required by statute. There is no evidence that the revisers or the Legislature designed to change the effect of the former statutes upon this subject. The change in the language does not necessarily imply a change in the statute revised. (Croswell *v.* Crane, 7 Barb. 191, and cases cited at p. 195.) I think that a conveyance of a married woman can only become operative upon her private examination before a proper officer, duly certified by him, and that it cannot be established by parol."

If the certificate be mere matter *in pais*, it is hard to see why parol evidence could not be admitted to amend or perfect it; or why, if the officer can be permitted to cure defects in it by his certificate, he should not by his affidavit, or by his testimony in open Court.

The history of the law on this subject throws light upon the question. At common law a married woman could convey her property by fine, which was a feoffment of record; but then she was to be examined privately, whether she did it willingly and freely, or by com-

Bours *v.* Zachariah and Wife.

pulsion of her husband.  The record of the fine is evidence of the private examination of the married woman, and cannot be contradicted ; for that were to lessen the credit of the judgments of the Courts of justice, which is the highest evidence of the law.  (Bacon Abr. Fines and Recor. C.)  In some of the States—Virginia and Kentucky, for example—acknowledgments of married women were sometimes, perhaps are still, taken in open Court, and entered of record.  In the United States generally, however, as a more convenient method, certain officers were clothed by statute with the power of taking and certifying these acknowledgments ; and by the statute of 3 and 4 William IV, the same power is given to certain commissioners in England.  It is very clear, that when this entry of acknowledgment was made in open Court, parol evidence could not be admitted to contradict it, nor was it different in this respect from any other judgment entry.  As this same duty, once done in open Court, is now cast upon particular officers, the manner of discharging the duty, and the duty itself remaining substantially the same, it would seem that the acts of these officers should have the same effect as the act of the Court in this respect.  Their certificates become to some extent records.  It is true, they may not be absolutely conclusive ; neither are records so held to be in every respect at this day.  The precise degree of credit may not be given to these certificates as to the judgments of Courts of record ; but we apprehend that they are entitled to much of the weight and authority of records, and that with some modifications, probably, (which, however, do not affect the question now before us) the same general principles of construction and intendment which apply to other matters of the same class apply to them.  This is evidently the opinion of the Supreme Court of the United States, in the case relied upon by appellant and respondent both, in 1 Peters, 339, Elliott *v.* Piersoll.  We think this case conclusive of the question before us.  The facts are these :  James Elliott, and Sarah, his wife, executed a deed to Benjamin Elliott, and came before the Clerk of Woodford county, Ky., and " acknowledged the same to be their act and deed."  The Clerk signed the certificate of this fact, adding also, that the same (deed) is duly recorded.

By the laws of Kentucky then in force, the Clerk had power to

take the acknowledgment of *femmes covert*—the law being substantially the same as that of California as to the requisites of acknowledgments, etc.   Some time afterwards, Elliott moved the County Court to amend the certificate endorsed on the deed, and for the deed and certificate, as amended, to be recorded—which motion was granted, and the new record made.   The question of the validity of the deed to pass the estate of the wife arising on this state of facts, the Supreme Court of the United States, on appeal, affirmed the judgment below in favor of her title.   The Supreme Court held that the County Court had no jurisdiction, and its order was void, for the reason that the statute had given this power to the Clerk, and the Court had no supervision over him in this respect.   The appellants insisted that the order of the Court could be disregarded, and that the amendment stood as the act of the Clerk, having a right to amend his certificate on the back of the deed and make a record of it.   The Court says:

" Had the Clerk authority to alter the record of his certificate of the acknowledgment of the deed at any time after the record was made ?   We are of opinion he had not ; we are of opinion he acted ministerially and not judicially in the matter.   Until his certificate of the acknowledgment of Elliott and wife was recorded, it was, in its nature, but an act *in pais*, and alterable at the pleasure of the officer. But the authority of the Clerk to make and record a certificate of the acknowledgment of the deed was *functus officio* as soon as the record was made.   By the exertion of his authority, the authority itself became exhausted.   The act had become matter of record, fixed, permanent and unalterable ; and the remaining powers and duty of the Clerk were only to keep and preserve the record safely.

" If a Clerk may, after a deed, together with the acknowledgment or probate thereof, have been committed to record, under color of amendment, add anything to the record of the acknowledgment, we can see no just reason why he may not also subtract from it.

" The doctrine that a Clerk may at any time, without limitation, alter the record of the acknowledgment of a deed made in his office, it would be, in practice, of very dangerous consequence to the land titles of the county, and cannot receive the sanction of this Court."

This language is relied on by appellant, as establishing the propo-

Bours *v.* Zachariah and Wife.

sition that the mere taking of the acknowledgment is an act *in pais* and subject to be amended by the officer.  But the words of the text must be altered before such a construction can be given; for, after the record by the Clerk in Elliott's case was made, the power of amendment ceased; the certificate was insufficient to entitle the deed to record as to Mrs. Elliott; yet it was recorded, and after the record it was held the Clerk's power over the subject ceased.  Where is the difference between the Clerk's power ceasing on his recording the deed and certificate, and the Notary's power ceasing after the recording by the Clerk?  The Court means no more than this; that while the deed and acknowledgment are in possession of the Clerk, and his office of properly certifying the acknowledgment and recording the papers unaccomplished, the matter was in *fieri*, and he might go on at any time before he finished the business, to complete it, just as in this case, if the Notary had retained the papers, and had, in attempting to write the certificate, made a mistake, he might have rectified it at any time before he discharged himself of the business; or delivered the papers for record, or possibly before they had been recorded.  But it is not intimated that after the papers had gone from his to another officer's possession, and been delivered for record, or actually recorded, he still could control them.  In such case " by the exertion of his authority the authority itself becomes exhausted."  The whole reasoning of the Court, in the section quoted, is direct to show that the Notary could have no such authority; for all the evils which are so well stated would follow as well from permitting alteration of the record to be made by amendments of the Notary as of the Clerk.  This singular result, too, would follow.  Under our statute the Clerk can take the acknowledgment as well as the Notary.  The *Notary* may amend the certificate, and therefore, the record, after the deed and certificate are recorded; but the *Clerk*, by the direct language of the decision cited, could not.  The decision in 1 Peters, therefore, only amounts to this: that the act is *in pais* until some decisive act is done, showing that the officer has exercised his authority over the subject; such as recording the papers or the like; but after that, like other cases of special authority, the power once exercised is exhausted.

We do not deem it necessary to criticise the case of Jordan *v.*

Casey, in 2 Carter's Ind. Rep.  That case we think wholly unsupported by authority.  (See also 2 Conn., 527 ; 3 *Ib.*, 406 ; 11 *Ib.*, 129 ; 1 Binney, 470 ; 9 S. and R., 270.)  In this last case it was attempted to supply the defect by the evidence of the magistrate taking the acknowledgment.  But the Court overruled the point, saying, " there would be no certainty in land titles if this kind of evidence were admitted."  But if the principle contended for be true, why not suggest to or permit the officer, while denying him permission to state the facts validating the deed on oath, to certify them to the Court ?

The fact that in some of the cases cited the statutes construed require the recording of the deed to give or complete the title, does not make the cases less authoritative ; for the reasoning of the Judges does not rest upon this circumstance.

We decided at this term that the homestead must be conveyed in the same manner as the separate estate of the wife, so far as the certificate of acknowledgment is concerned.

The judgment of the District Court is affirmed.