In re Mikki Sue GRAY, Debtor.

William B. Logan, Jr., Plaintiff,

v.

WMC Mortgage Corp., Defendant.

Bankruptcy No. 08–52470.
Adversary No. 08–2136.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division,
at Columbus.

Aug. 14, 2009.

Kenneth M. Richards, Columbus, OH, for Plaintiff.

Philomena S. Ashdown, Cincinnati, OH, for Defendant.

### *MEMORANDUM OPINION ON MOTIONS FOR SUMMARY JUDGMENT*

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

### I. Introduction

In this adversary proceeding, William B. Logan, Jr., the Chapter 7 trustee ("Trustee") for the bankruptcy estate of Mikki Sue Gray ("Debtor" or "Ms. Gray"), seeks to avoid a first mortgage now held by WMC Mortgage, LLC ("WMC") on the Debtor's real property.[1] The Trustee requests this relief under 11 U.S.C. § 544(a) for two reasons. First, the notary public responsible for certifying the acknowledgment of Ms. Gray's signature originally omitted her name from the certificate of acknowledgment. Second, although the notary public later corrected his certificate by adding Ms. Gray's name, he did so after the mortgage had already been recorded and caused the mortgage to be re-recorded without having Ms. Gray re-acknowledge her signature.

WMC concedes that the original mortgage is avoidable due to the omission of Ms. Gray's name from the notary public's

---

1. WMC is the successor in interest to Defen-   dant WMC Mortgage Corp.

certificate of acknowledgment. The Court concludes that the rerecorded mortgage also is avoidable because the notary public lacked the authority to alter the record by re-recording the mortgage without re-acknowledgment by Ms. Gray. The Court therefore grants summary judgment in favor of the Trustee.

## II. Jurisdiction

The Court has jurisdiction to determine this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(K).

## III. Background

The Debtor filed a voluntary Chapter 7 petition on March 21, 2008 ("Petition Date"). Thereafter, the Trustee filed his complaint commencing this adversary proceeding and, after a pretrial conference, filed an amended complaint ("Amended Complaint") (Doc. 11), to which he attached copies of the mortgages. By the Amended Complaint, the Trustee, pursuant to § 544(a),[2] seeks to avoid a first mortgage lien held by WMC[3]—which is evidenced by two separately recorded mortgage instruments—and preserve the

lien for the benefit of the Debtor's bankruptcy estate under § 551 of the Bankruptcy Code.[4] The parties have filed competing summary judgment motions (Docs. 16 & 17) and responses thereto (Docs. 19, 20 & 21). They also have filed a Stipulation of Facts ("Stipulations") (Doc. 13), from which the following findings of fact are derived.

Prior to the Petition Date, Ms. Gray bought real property located at 311 Simpson Road, London, Ohio ("Property") with funds loaned by WMC Mortgage Corp., the predecessor in interest to WMC, pursuant to a promissory note dated September 10, 2004 ("Note"). Richard E. Flax ("Mr. Flax"), the attorney for the title agency responsible for the closing, was the notary public before whom the Debtor signed the original mortgage ("Original Mortgage"). During the closing, Ms. Gray provided Mr. Flax with her identification so he could ensure that she was the person signing the Note and the Original Mortgage. At that time, Mr. Flax also took the acknowledgment of Ms. Gray and subscribed his name to the Original Mortgage. Mr. Flax, however, omitted Ms. Gray's name and the date of her sig-

---

**2.** Section 544(a) of the Bankruptcy Code provides as follows:

    (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

    (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

    (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against

the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

    (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists. 11 U.S.C. § 544(a).

**3.** WMC also holds a second mortgage against the Debtor's real property, which the Trustee has not sought to avoid.

**4.** "Any transfer avoided under section . . . 544 . . . is preserved for the benefit of the estate but only with respect to property of the estate." 11 U.S.C. § 551.

nature from the certificate of acknowledgment.

The Original Mortgage was recorded on September 15, 2004 in the Recorder's Office for Madison County, Ohio, ("Recorder"). Approximately eight months later, Mr. Flax—after being advised by WMC that his certificate of acknowledgment had not included the date of signature or Ms. Gray's name—caused the omitted information to be typed on a copy of the recorded Original Mortgage. In addition, the following hand-written notation was placed on the first page of the Original Mortgage: "Re-recorded to add date and name of mortgagor, p. 13." Mr. Flax then caused this copy of the mortgage ("Re–Recorded Mortgage") to be recorded on May 6, 2005. Ms. Gray did not re-sign the Re–Recorded Mortgage.[5] WMC does not allege that Ms. Gray re-acknowledged her signature.

### IV. Arguments of the Parties

WMC disputes the Trustee's contention that the omission of the signature date from the certificate of acknowledgment rendered the certificate defective, but concedes that the omission of Ms. Gray's name had that effect. *See* Reply of Defendant WMC Mortgage, LLC to Trustee's Motion for Summary Judgment ("Reply") (Doc. 19) at 1. WMC, however, contends that the inclusion of the omitted information in the Re–Recorded Mortgage makes that mortgage valid and unavoidable. The Trustee disagrees. According to the Trustee, Mr. Flax's corrective actions were of no effect because "[t]he alterations, made without the Debtor's knowledge, change the mortgage [from] one that is defective under Ohio law and avoidable by the Trustee into one which is valid under Ohio law and not avoidable by the Trustee." Plaintiff's Motion for Summary Judgment (Doc. 16) at 4.

WMC counters with the argument that, despite the deficient certification, the Original Mortgage was always effective between WMC and the Debtor. Further, WMC contends, the addition of Ms. Gray's name and the date of signing "neither abrogated the rights of any intervening third party, nor did it improperly increase or decrease the scope of the mortgage." Motion of Defendant WMC Mortgage, LLC for Summary Judgment at 5 ("WMC Motion") (Doc. 17); Reply at 2–3. According to WMC, "all that is required is that the acknowledgment be taken after the execution of the instrument, during the time the instrument is effective, and while the person taking the acknowledgment is authorized to do so." WMC Motion at 4–5 (footnotes omitted). WMC contends that the Trustee cannot avoid the Re–Recorded Mortgage because it met each of the requirements for the proper execution of a mortgage and did so prior to the Petition Date.

### V. Legal Analysis

#### A. This Matter is Appropriate for Summary Judgment.

Under Fed.R.Civ.P. 56(c), made applicable in this adversary proceeding by Fed. R. Bankr.P. 7056, summary judgment is appropriate where "the pleadings, the dis-

---

5. Attached as Exhibit C to the Stipulations is a copy of a mortgage purported by the parties to be the Original Mortgage. The mortgage attached as Exhibit C, however, does not match the description of the Original Mortgage to which the parties have stipulated and does not match the description or copies of any mortgage attached to the Amended Complaint. Rather, the mortgage attached as Ex-

hibit C to the Stipulations is a second mortgage held by WMC on the Property, which the Trustee has not sought to avoid. The Court, therefore, will base its analysis of the Original Mortgage on the copy attached as Exhibit 1 to the Amended Complaint, which matches the description of the Original Mortgage set forth in the Stipulations.

covery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Novak v. MetroHealth Med. Ctr.,* 503 F.3d 572, 577 (6th Cir.2007). " '[A]s to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.' " *Niecko v. Emro Mktg. Co.,* 973 F.2d 1296, 1304 (6th Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " *Novak,* 503 F.3d at 577 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Ransier v. Standard Fed. Bank (In re Collins),* 292 B.R. 842, 845 (Bankr.S.D.Ohio 2003). The filing of cross-motions does not alter the standards governing the determination of summary judgment motions. *See Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir. 1991). But " 'cross motions for summary judgment do authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties.' " *Schafer v. Rapp (In re Rapp),* 375 B.R. 421, 428 (Bankr. S.D.Ohio 2007) (quoting *Greer v. United States,* 207 F.3d 322, 326 (6th Cir.2000)).

Here, the parties agree, and the Court finds, that no genuine issue of material fact exists. Summary judgment, therefore, is appropriate.

## B. The Trustee May Avoid Both Mortgages.

██ Applicable state law—here, the law of Ohio—governs the validity and priority of mortgages as against bankruptcy trustees seeking to avoid the mortgages in their capacities as hypothetical bona fide purchasers and judicial lien creditors. *See Kildow v. EMC Mortgage Corp. (In re Kildow),* 232 B.R. 686, 693 (Bankr. S.D.Ohio 1999) (citing *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)); *Drown v. Countrywide Home Loans, Inc. (In re Peed),* 403 B.R. 525, 530 (Bankr.S.D.Ohio 2009). Under Ohio law, only properly executed mortgages take priority over bona fide purchasers and judgment lien creditors. *See Van Thorniley v. Peters,* 26 Ohio St. 471, 474 (Ohio 1875) ("An unrecorded mortgage, or a defectively executed mortgage, whether recorded or not, does not vest in the mortgagee any interest in the premises, either legal or equitable, as against subsequent purchasers or judgment creditors of the mortgagor.").

██ To determine whether a mortgage governed by Ohio law is properly executed, the Court looks to Ohio Revised Code § 5301.01(A), which provides as follows:

> A ... mortgage ... shall be signed by the ... mortgagor.... The signing shall be acknowledged by the ... mortgagor ... before a judge or clerk of a court of record in this state, or a county auditor, county engineer, notary public, or mayor, who shall certify the acknowledgement and subscribe the official's name to the certificate of the acknowledgement.

Ohio Rev.Code Ann. § 5301.01(A) (West 2009).[6] Under this statute, four require-

---

**6.** The Ohio Revised Code sometimes uses the spelling *acknowledgment* and other times the

ments must be met, two by the mortgagor and two by the presiding public official (in this case, a notary public): the mortgagor must sign the mortgage and acknowledge the signing before the notary public, and the notary public must certify the acknowledgment and subscribe his or her name to the certificate. *See Peed,* 403 B.R. at 531.

### 1. The Original Mortgage and the Requirement of Identification

■ The requirement of certification necessitates "some identification of the person whose signature is being acknowledged." *Geygan v. World Savs. Bank (In re Nolan),* 383 B.R. 391, 396 (6th Cir. BAP 2008) (internal quotation marks omitted). *See also Peed,* 403 B.R. at 531; *Terlecky v. Countrywide Home Loans, Inc. (In re Baruch),* 2009 Bankr.Lexis 608 at *22 (Bankr. S.D.Ohio Feb. 23, 2009) ("An acknowledgment clause containing nothing relative to the mortgagor's identity is insufficient; rather, an acknowledgment clause must either identify the mortgagor by name or contain information that permits the mortgagor to be identified by reference to the mortgage."). As WMC concedes, the omission of Ms. Gray's name caused the Original Mortgage to fail the certification requirement, thereby rendering the Original Mortgage avoidable by the Trustee. *See Nolan,* 383 B.R. at 396; *Peed,* 403 B.R. at 531; *Baruch,* 2009 Bankr.Lexis 608 at *24.

### 2. The Re–Recorded Mortgage and the Principle of *Functus Oficio*

■ The Re–Recorded Mortgage fails the certification requirement because Mr. Flax's re-certification and re-recording without re-acknowledgment was of no effect. In so holding, the Court relies on the doctrine of *functus officio* and case

law applying it. *Functus* means "having performed" and *officio* means "office." Thus, the phrase *functus officio* means "'having performed his or her office,' which in turn means that the public officer is 'without further authority or legal competence because the duties and functions of the original commission have been fully accomplished.'" *State ex rel. Ohio Gen. Assembly v. Brunner,* 114 Ohio St.3d 386, 872 N.E.2d 912, 932 (2007) (O'Donnell, J., concurring) (quoting *Black's Law Dictionary* 696 (8th Ed.2004)). *Functus officio* may not be as familiar as certain other Latin phrases that continue to be used in American jurisprudence; in fact, the litigants here have ignored the maxim and relevant case law. Despite its relative obscurity, however, the doctrine of *functus officio,* as well as the venerable cases applying it, warrant consideration.

■ *Elliott v. Peirsol's Lessee,* 26 U.S. 328, 1 Pet. 328, 7 L.Ed. 164 (1828), appears to be the first case to have applied the doctrine of *functus officio* in holding that a public official may not unilaterally amend a certificate of acknowledgment after the document on which it appears is recorded. In *Peirsol's Lessee,* the heirs of Sarah G. Elliott commenced an action to recover possession of real property from certain individuals who claimed an interest in the property based on a deed from Sarah and her husband. Sarah's heirs argued, among other things, that the deed did not convey her interest in the property because the public official who took Sarah's acknowledgment (the clerk of the court) had not properly certified it even though, after the deed was filed, the clerk had amended his certificate to make the required certification. The grantees under

---

variant spelling *acknowledgement.* Both are correct, although *acknowledgment* is more commonly used in American English. In this opinion, the Court will use the spelling used in the original source when quoting a statute, but otherwise will use *acknowledgment.*

the deed argued that the clerk had the authority at any time to amend and record his own certificate. The Supreme Court held to the contrary:

> Had the clerk authority to alter the record of his certificate of the acknowledgment of the deed, at any time after the record was made? We are of opinion he had not.

> We are of opinion he acted ministerially, and not judicially, in the matter.[7] Until his certificate of the acknowledgment ... was recorded, it was ... alterable at the pleasure of the officer. But the authority of the clerk to make and record a certificate of the acknowledgment of the deed, was *functus officio*, as soon as the record was made. By the exertion of his authority, the authority itself became exhausted. The act had become matter of record, fixed, permanent, and unalterable....

> If a clerk may, after a deed, together with the acknowledgment or probate thereof have been committed to record, under colour of amendment, add any thing to the record of the acknowledgment, we can see no just reason why he may not also subtract from it.

*Peirsol's Lessee*, 26 U.S. at 341–42, 1 Pet. 328.

The Ohio Supreme Court was the next to apply the doctrine. In *Doe v. Dugan*, 8 Ohio 87 (Ohio 1837), the sheriff of Hamilton County, Ohio had executed a sheriff's deed while still in office. However, he did not acknowledge the deed until after leaving office; the acknowledgment recited that it was by the *"late* sheriff." *Dugan*, 8 Ohio at 88. After the deed was recorded, the county recorder made a memorandum on the register regarding the deed, as follows: "This deed was drawn by the recorder, and executed in his presence by the sheriff. It was left in the office of the sheriff, subject to some arrangements with the grantee, but not delivered to him afterward; by an error entered on record, by the recorder, J.W. Browne." *Dugan*, 8 Ohio at 88. The Ohio Supreme Court held that the acknowledgment related back to the time the sheriff executed the deed.[8] The Court also held that the recorder's memorandum could not affect the validity of the deed one way or the other because "[i]t is not competent for a public officer to undo what he has once done, and thus correct his errors; when he has executed his duties, he is *functus officio*, and has lost his power over the subject." *Id.* at 107.

Given that the validity of a mortgage certification is governed by state law,[9] *Du-*

---

7. Likewise, in Ohio, taking an acknowledgment is a ministerial, not a judicial, act. *See Collett v. Cogar*, 35 Ohio St.3d 114, 518 N.E.2d 1202, 1204 (1988) ("The fact that the declaration was acknowledged by a notary does not give it the effect of a court order or judgment, since the power of a notary public is ministerial, not judicial.").

8. Under Ohio law as enunciated by the Ohio Supreme Court after *Dugan*, the sheriff's signing of the deed in the presence of the recorder would have constituted his acknowledgment. *See Wayne Bldg. & Loan Co. v. Hoover*, 12 Ohio St.2d 62, 231 N.E.2d 873, 874 (1967) ("[I]n the absence of evidence to the contrary, one who signs his name to a document in the presence of another thereby acknowledges his signing thereof to such other.").

9. Ohio law is controlling here—both on the question of whether the original mortgage was properly executed and the question of whether the re-certification and re-recording of the mortgage was of any legal effect. *See Butner*, 440 U.S. at 55, 99 S.Ct. 914 ("The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests...."); *Reinhardt v. Vanderbilt Mortgage & Fin., Inc. (In re Reinhardt)*, 563 F.3d 558, 563 (6th Cir.2009) ("Where the Code does not specifically address an issue ... bankruptcy court[s] look[] to state law, to the extent that it does

*gan* is controlling and requires the Court to conclude that the re-recording attempted here was invalid. *Peirsol's Lessee*, which is highly persuasive, leads the Court to the same conclusion. Although the Court need rely on no other authority, it is worth noting that the vast majority of courts considering the issue likewise have held that an attempt by a notary public or other public official to correct a certification of acknowledgment after the document on which it appears has been recorded is void absent re-acknowledgment by the grantor. *See Griffith v. Ventress*, 91 Ala. 366, 8 So. 312, 315 (1890) ("[W]hen delivered to the parties and accepted for record ... [the officer before whom the acknowledgment is made] has no power to alter, add to, or make a new certificate, without a reacknowledgment.... We hold that the second certificate was made without legal authority, and is invalid." (citations omitted)); *Bours v. Zachariah*, 11 Cal. 281, 295 (Cal.1858) ("We think [*Peirsol's Lessee* ] conclusive of the question before us."); *Robinson v. Bruner*, 94 Fla. 797, 114 So. 556, 559 (1927) ("[A]fter delivery of the instrument and acceptance by the parties thereto the officer taking the acknowledgment may not amend the certificate of acknowledgment to set forth the true facts ... without a reacknowledgment." (citing *Durham v. Stephenson*, 41 Fla. 112, 25 So. 284, 286–87 (1899) ("We hold that, upon principle, when an officer has taken an acknowledgment, and made his certificate thereof, which has been delivered to and accepted by the grantee as the evidence of such acknowledgment, his power over the subject-matter ceases; and he cannot subsequently amend his certificate, or make a new one, in the absence of a reacknowledgment, or what is equivalent thereto, on the part of the grantor."))); *Merritt v. Yates*, 71 Ill. 636, 638 (Ill.1874)

("It is also contended, that the subsequent certificate, written by the justice of the peace on the deed some years after the first was made, cured the defective certificate, although the deed was not re-acknowledged. We have been referred to no precedent for such action, and we would confidently expect that none could be found."); *Youtz v. Julliard*, 1888 WL 284 at *3 (Ohio Com.Pl.1888) ("As is said in the case of *Doe v. Dugan*, 8 Ohio 87, 108, it is incompetent for a public officer to undo what he has once done; when he has done his duties, he is *functus officio* and has lost his power over the subject.... If this change was made without authority ... then [it was] a nullity [that] had no effect in law.... As constructive notice it was a blank."); *Enter. Transit Co. v. Sheedy*, 103 Pa. 492, 1883 WL 13431 at *6 (1883) ("More than five months after the acknowledgment was actually taken, and the certificate thereof signed by the notary public indorsed thereon, he wrote and signed a second certificate of acknowledgment. The parties to the instrument did not again come before him, but he certifies what occurred months before.... Effect cannot be given to this latter action of the notary public."); *McMullen v. Eagan*, 21 W.Va. 233, 245 (W.Va.1882) ("A record [of a deed] must be made, and when made, like other records, it is a verity and cannot be corrected or changed afterwards by the officer."). The vintage of these cases—and the absence of any more recent opinions along the same lines—suggests that the issue, being so well-settled, is today rarely presented for courts to decide.

Although not relied upon by WMC, a minority of courts have held that a public official has the authority to correct a certificate of acknowledgment and cause the mortgage to be rerecorded—even without re-acknowledgment—so long as the rights

not conflict with the [B]ankrupty [C]ode[.]"

(internal quotation marks omitted)).

of third parties have not intervened. *See Banks v. Shaw*, 227 N.C. 172, 41 S.E.2d 281, 281 (1947) ("[T]he notary took the acknowledgment of the grantors ... but inadvertently omitted the name of the husband from his certificate.... [T]he notary [later] amended his certificate to speak the truth, attached it to the deed of trust, and the deed of trust with amended certificate in due form was again registered. No rights of third parties or creditors have intervened.... The certificate could be amended subsequently to speak the truth, no rights of creditors or third parties being involved."); *Gropper v. Hoover*, 5 N.J. Misc. 649, 137 A. 837, 838 (1927) ("We think there is no legal obstacle in the way of curing a defective acknowledgment, where it can be done without prejudice to the rights of third parties, for such an act rather bespeaks good faith."); *see also Jordan v. Corey*, 2 Ind. 385, 388 (Ind. 1850). These decisions, however, are not controlling, and in the Court's view, were erroneously decided. In fact, the only one that cites *Peirsol's Lessee—Jordan v. Corey*—misread the Supreme Court's decision. *See Griffith*, 8 So. at 314 ("The reasoning and conclusion of the court in [*Peirsol's Lessee* ] exclude it as an authority to sustain the proposition declared in [*Jordan v. Corey* ].... It is to the reverse."); *Bours*, 11 Cal. at 289 ("The slightest examination of the case of [*Peirsol's Lessee* ] ... will show that it is directly contrary to the doctrine laid down in *Jordan v. Corey*. [At page 341 of the *Peirsol's Lessee* opinion, the Supreme Court states]: 'Had the Clerk the authority to alter the record of the certificate of the acknowledgment of the deed at any time after the record was made? We are of the opinion *he had not*.' But the Court, in the case of *Jordan v. Corey*, cited this case as an authority for saying he *had*. A more palpable and outrageous perversion of an authority cannot be found in all

judicial annals than this."); *Butler v. Butler*, 169 N.C. 584, 86 S.E. 507, 511 (1915) ("[T]he case of *Jordan v. Corey* ... has been disapproved by the other courts as being wholly unsupported by reason, or by precedents elsewhere.").

WMC has cited two decisions for the proposition that "Ohio law allows a defective mortgage to be corrected and re-recorded." WMC Motion at 5 (citing *Indy-Mac Bank, FSB v. Bridges*, 169 Ohio App.3d 389, 863 N.E.2d 185 (2006) and *Fed. Nat'l Mortgage Ass'n v. Webb*, 2006 WL 1901016 (Ohio Ct.App. July 6, 2006)). Those opinions, however, merely recited in passing that a correction and re-recording occurred; they did not state whether the re-recording was done with or without the grantor's re-acknowledgment and did not rule on or even address the validity of re-recording absent re-acknowledgment.

■ In Ohio, a "notary public is a public officer." *State ex rel. Smith v. Johnson*, 12 Ohio App.2d 87, 231 N.E.2d 81, 84 (1967). *See also Jii v. Rhodes*, 577 F.Supp. 1128, 1131 (S.D.Ohio 1983); *Hardesty v. Citifinancial, Inc. (In re Roberts)*, 402 B.R. 808, 815 (Bankr.S.D.Ohio 2009); Michael L. Closen & G. Grant Dixon III, *Notaries Public from the Time of the Roman Empire to the United States Today, and Tomorrow*, 68 N.D. L.Rev. 873, 873 (1992). By virtue of the doctrine of *functus officio*, therefore, Mr. Flax had no authority to make a certification after the Original Mortgage was recorded unless he obtained the re-acknowledgment of Ms. Gray, which he did not do.

Ignoring the principle of *functus officio*, WMC contends that a mode of argumentation and style of reasoning described by different Latin terminology—*reductio ad absurdum*—controls the outcome of this adversary proceeding:

The Trustee has also offered no evidence or law to support his assertion that re-recording to correct the formalities of execution is prohibited by Ohio law when there are no intervening innocent third parties or bona fide purchasers and no material alteration. If the Trustee's argument were taken to its *reductio ad absurdum*, then no deed or conveyance could . . . ever be re-recorded to correct a recording defect as such act would be considered a 'material alteration'—hardly the intent of the Ohio legislature.

Reply at 3.

*Reductio ad absurdum* is "Latin [for] 'reduction to the absurd'" and is shorthand "[i]n logic [for] disproof of an argument by showing that it leads to a ridiculous conclusion." *Black's Law Dictionary* 1305 (8th ed.2004). The *reductio ad absurdum* postulated by WMC is as follows: The Trustee's argument is that Mr. Flax could not revise his certificate to include Ms. Gray's name because of the "general rule of the law that the unauthorized material alteration of a written instrument by the holder, or with his consent, vitiates it as to non-consenting parties." *Thompson v. Massie*, 41 Ohio St. 307, 319 (Ohio 1884) (internal quotation marks omitted). If that were true, then a document that was not entitled to be recorded due to a defect in execution could never be corrected and re-recorded because the correction would always be deemed a material alteration. This would be an absurd result, WMC contends, because the Ohio legislature could not have intended that a defectively-executed mortgage could never be corrected and re-recorded.

■ This *reductio ad absurdum* is unpersuasive for several reasons. First, the Court's decision is not based on the material-alteration rule. As explained in *Huntington & McIntyre v. W.M. Finch & Co.*, 3

Ohio St. 445, 449 (Ohio 1854), the material-alteration rule "is founded on a presumption of fraud; and the alteration must be such as to effect some change in the meaning or legal operation of the instrument." The rule enunciated in *Thompson* and *Huntington* does not apply here. By signing the Original Mortgage, Ms. Gray was agreeing to the terms on which her obligations under the Note would be secured. Despite the defective certificate of acknowledgment, the Original Mortgage was always effective between Ms. Gray and WMC. *See Van Thorniley*, 26 Ohio St. at 474 ("As between the parties to such mortgage, whether it be duly executed and not recorded, or defectively executed and recorded or not, equity will give it effect according to the intention of the parties."). Thus, by revising his certification Mr. Flax did not materially alter the legal rights or obligations of the Debtor or WMC. And the material-alteration rule does not come into play here for the additional reason that there is no suggestion of fraud by Ms. Gray in her dealings with WMC. There is no allegation that Ms. Gray and WMC made what would be a highly unusual agreement—that the Original Mortgage would be avoidable by a bankruptcy trustee. The Court's ruling in favor of the Trustee, therefore, is not based on the Trustee's material-alteration theory.

■ Nor is the *reductio ad absurdum* suggested by WMC really absurd at all. A lender and notary public can always cause a defective document to be re-recorded with the cooperation of the mortgagor. *See McMullen*, 21 W.Va. at 233, 246 ("[T]he formal acknowledgment of this deed, in the proper manner, made . . . nearly three years afterwards . . . before the clerk of the court . . . and his endorsement of this new acknowledgment in proper form on this deed cured this defect. . . ."). And, even if cooperation was

not forthcoming, an inability to re-record would hardly be absurd, as disagreeable as it might be to WMC. *See In re Richardson,* 217 B.R. 479, 491 (Bankr.M.D.La. 1998) ("A result is absurd if it is 'unthinkable' or 'bizarre[,]' or 'demonstrably at odds with the intentions of its drafters.' It is not absurd if it is merely 'personally disagreeable,' or 'mischievous' or 'objectionable.'" (citations omitted)). To the contrary, ruling in favor of WMC might encourage lenders and notaries public to exercise less, not more, care in taking acknowledgments. Although it is presented as a valid appeal to logic, WMC's argument for a second chance actually points out the importance of certifying the acknowledgment correctly the first time, before the mortgage is recorded.

Finally, rather than supporting its position, WMC's appeal to the intent of the Ohio legislature also counsels in favor of the Court's decision. The purpose of the statutory requirements for the acknowledgment and certification of mortgages and other real property instruments is not only to "prevent the perpetration of frauds on the grantors," but also to "afford reasonable assurance to those who deal with or on the faith of such instruments that they are genuine and represent bona fide transactions." *Amick v. Woodworth,* 58 Ohio St. 86, 50 N.E. 437, 440 (1898). The application of *functus officio* fulfills this intent:

> [The principles requiring re-acknowledgment] may work a hardship in some cases, but they afford a much safer protection to titles than to leave such an important interest to the voluntary action and uncertain memory of the officers authorized by statute to take acknowledgments and make the certificates.... If he can make a new certificate four years after the deed has been delivered and recorded, why

not 20 years after, and, perhaps, after parties and witnesses have died? *Griffith,* 8 So. at 315. *See also Peirsol's Lessee,* 26 U.S. at 342, 1 Pet. 328 ("The doctrine that a clerk may, at any time, without limitation alter the record of the acknowledgment of a deed, made in his office, would be, in practice, of very dangerous consequence to the land titles of the county, and cannot receive the sanction of this Court."). Nothing has changed with respect to the recording of interests in real property in the years since *Peirsol's Lessee* and *Griffith* were decided that would lead this Court to conclude that notaries public or other public officials should now be allowed to unilaterally amend their certifications.

## VI. Conclusion

For the foregoing reasons, the Court **GRANTS** the Trustee's motion for summary judgment and **DENIES** WMC's motion for summary judgment. The Court will issue a separate judgment entry in accordance with this memorandum opinion.

**IT IS SO ORDERED.**