In re Kevin D. KILDOW, Debtor.

Kevin D. Kildow, Plaintiff,

v.

EMC Mortgage Corporation,
Defendant.

Kevin D. Kildow, Plaintiff,

v.

Midwest Savings Bank, Defendant.

Kevin D. Kildow, Plaintiff,

v.

City Loan Financial Services,
et al., Defendants.

Bankruptcy No. 94–51378.
Adversary Nos. 98–112, 98–113, 98–114.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

March 19, 1999.

David A. Skrobot/Myriam Waksman Gluck, Skrobot Pope Levy & Fisher LLP, Columbus, Ohio, for plaintiff.

Frank M. Pees, Worthington, Ohio, Chapter 13 Trustee.

Kenneth C. Johnson, Bricker & Eckler, Columbus, Ohio, for Midwest Savings Bank.

D.L. Mains, Jr., Weltman Weinberg & Reis Co., LPA, Columbus, Ohio, for City Loan Financial Services, Inc.

Kathleen E. Hayes, Lerner Sampson & Rothfuss, Cincinnati, Ohio, for EMC Mortgage Corporation.

### ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

CHARLES M. CALDWELL, Bankruptcy Judge.

The adversary proceedings captioned above have arisen from the chapter 13 case of a single debtor, Kevin Kildow. The adversaries are before the Court on the

motions for summary judgment filed by each of the Defendants. Because they raise identical legal issues, the Court will dispose of all three adversaries in a single order. In view of the voluminous history of this case and the long-standing dispute between the parties, the Court will very briefly set forth some of the facts of Mr. Kildow's chapter 13 case, and will focus on those facts directly relevant to each of the adversary proceedings and the respective property interests.

The legal issues may be summarized as follows:

(1) Whether a chapter 13 debtor has the power to seek the avoidance of a voluntary security interest;

(2) Whether it is appropriate to order the reformation of a mortgage deed containing an inaccurate property description;

(3) Whether it is appropriate to order the reinstatement of a mortgage that was released by mistake and without consideration; and

(4) Whether laches precludes reinstatement or reformation.

The Court holds that Mr. Kildow does not have standing to avoid the Defendants' liens, as they are consensual in nature, that the Defendants are entitled to reformation or reinstatement, and that laches does not preclude reformation or reinstatement.

While the law does not permit Mr. Kildow to prevail today, the Court hopes that his counsel and counsel for the Defendants will engage in a deliberate, thorough, and objective analysis of those options which may be available to this debtor. The Court urges the parties to endeavor to choose the path that will result in the least expense, delay, and additional conflict, and which will finally bring this case, with its long and troubled history, to a close.

Mr. Kildow filed his petition for relief under chapter 13 of the Bankruptcy Code on March 15, 1994. His plan, which provided a twenty percent dividend to unsecured, nonpriority creditors, was confirmed on May 18, 1994. On or about September 20, 1997, Mr. Kildow paid off his chapter 13 plan.

Before he could be granted a discharge, however, Midwest Savings Bank ("Midwest") and City Loan Financial Services ("City Loan") filed motions for relief from stay, requesting this Court's permission to seek the reformation or reinstatement of their mortgages in state court. These motions were withdrawn on November 4, 1997, and Mr. Kildow received a discharge on November 7, 1997.

On January 14, 1998, after a hearing set pursuant to correspondence received from Mr. Kildow, in which he raised serious issues concerning the adequacy of the assistance he had received from his counsel, this Court vacated Mr. Kildow's discharge. This action was taken to give Mr. Kildow and his new counsel an opportunity to initiate adversary proceedings against Midwest, City Loan and EMC Mortgage Corporation ("EMC"). All of these mortgagees hold promissory notes secured by mortgages on one or both of two pieces of real property owned by Mr. Kildow or in which he has an interest. Separate adversary proceedings were commenced against each of the mortgagees on May 1, 1998. Mr. Kildow seeks an order declaring each of the mortgagees to be unsecured, and requiring the mortgagees to disgorge all of the funds they have received in excess of the amounts to which they would have been entitled as unsecured, nonpriority creditors under his chapter 13 plan.

### Kildow v. EMC Mortgage Corporation (In re Kildow), Adv. Proc. No. 98–0112

On October 9, 1987, Mr. Kildow and his mother, Mrs. Waldtraut Kildow ("Mrs. Kildow"), executed a promissory note in favor of Home Savings of America in the principal amount of $70,000.00. The note was secured by a mortgage on real property located at 3141 Asbury Drive (the "Asbury Property"). The mortgage was recorded on October 19, 1987. The note and mort-

gage were assigned to EMC on December 14, 1993. The legal description contained in the mortgage deed provides as follows:

Situated in the County of Franklin, in the State of Ohio, and in the City of Columbus: being a parcel of land eighty (80) feet in length off the entire southerly end of lot number three hundred sixty-six (366) of the subdivision or allotment known as East Cleft on the Scioto, as the same is numbered and delineated upon the recorded plat of said subdivision, of record in plat book no. 11, page 1, recorder's office, Franklin County, Ohio.

The mortgage deed goes on to provide that the parcel legally described above is "commonly known as 3141 Asbury Drive, Columbus, OH 43221." The parties do not dispute that the legal description is deficient in that it fails to provide that the parcel of real estate is eighty (80) feet in length off the entire southerly end of lot number three hundred sixty-seven (367) as well as lot number three hundred sixty-six (366).

Mr. Kildow has admitted that he intended to grant a mortgage on the entire parcel commonly known as 3141 Asbury Drive, and that he did not intend to exclude eighty feet off the southerly end of lot number three hundred sixty-seven. EMC has admitted that its intent was to take a mortgage on the entire parcel commonly known as 3141 Asbury Drive, including eighty feet off the southerly end of lot number three hundred sixty-seven.

The parties do not dispute that EMC filed a Motion for Relief from Stay on March 4, 1996, after Mr. Kildow became delinquent in his payments to the chapter 13 trustee, which resulted in the accumulation of a postpetition arrearage on the payments due to EMC, whose claim was to be paid via conduit. An Agreed Order was entered on April 3, 1996, in an attempt to cure the arrearage and avoid foreclosure.

The Agreed Order provided that Mr. Kildow was to make certain payments to the office of the chapter 13 trustee prior to a specified date. The Agreed Order also provided that, in the event Mr. Kildow failed to fulfill these payment obligations, EMC would be permitted to file and serve a Notice of Default. The Notice of Default was subject to a ten-day period within which limited objections could be filed. If no objections were filed, EMC would be granted relief from stay, and could proceed to foreclose upon the Asbury Property.

The parties agree that EMC filed a Notice of Default on June 7, 1996. EMC states that once the period during which the parties could have opposed the Notice of Default had expired without objection, its counsel prepared to proceed with foreclosure. It was then, EMC asserts, that its counsel became aware of a stayed foreclosure action that had been commenced in 1994, as well as of the deficiency in the legal description contained in the mortgage deed. On October 7, 1996, EMC filed an entry reactivating the foreclosure action, informing the Franklin County Court of Common Pleas that the stay imposed by Section 362 had been lifted, and that the foreclosure could continue.[1]

Also on October 7, 1996, EMC filed an Amended Complaint in the foreclosure action, amending its prayer to include reformation of the mortgage deed so that it would conform to the intent of EMC and Mr. Kildow and include in the mortgaged parcel eighty feet off the southerly end of lot number three hundred sixty-seven (367). The entry reactivating the foreclosure was served upon Mr. Kildow, but his name does not appear in the Certificate of Service attached to the Amended Complaint. EMC states that Mr. Kildow was served with the Amended Complaint by personal service on November 13, 1996,

---

1. Unless otherwise noted, all statutory citations will refer to Title 11 of the United States Code, a.k.a. the Bankruptcy Code.

and Mr. Kildow has not contested this assertion.

The parties do not dispute that Mr. Kildow did not file an answer in response to the Amended Complaint, nor to the Motion for Default Judgment that EMC asserts it later filed. On February 26, 1997, a judgment and decree in foreclosure in favor of EMC was entered by the Franklin County Common Pleas Court. The entry specifically found that all necessary parties had been properly served, and that defendant Kevin Kildow was in default. The court went on to award judgment in favor of EMC on the principal balance of the note ($65,272.20), with interest at the. contract rate from June 15, 1995. The court further found that "by virtue of a mutual mistake of fact, the legal description in the mortgage herein fails to include 80 feet in length off the entire Southerly end of Lot 367 and the mortgage is hereby reformed to include 80 feet in length off the entire Southerly end of Lot 367." The court granted EMC the right to proceed to sell the Asbury Property at a sheriff's sale.

The parties do not dispute that on May 16, 1997, the Asbury Property was sold at a sheriff's sale for $118,000.00. Prior to the confirmation of the sheriff's sale, Mr. Kildow was able to redeem his property, paying off the amounts owed to EMC. The sheriff's sale was set aside and the foreclosure complaint dismissed.

### Kevin Kildow v. Midwest Savings Bank (In re Kildow), Adv. Proc. No. 98–0113

On December 11, 1990, Mr. Kildow executed a promissory note in favor of Midwest in the principal amount of $54,631.15. The note was secured by a mortgage on the Asbury Property, granted to Midwest by Mr. Kildow and Mrs. Kildow. The mortgage was recorded on December 14, 1990. Mrs. Kildow did not sign the promissory note, and she now owns no interest in the Asbury Property, having deeded her interest to Mr. Kildow.

The legal description contained in Midwest's mortgage deed describes property located at 2359 Zollinger Rd. (the "Zollinger Property"), rather than the intended collateral, the Asbury Property. The collateral is described as having the street address of 3141 Asbury Drive, Columbus, Ohio 43221. It is undisputed that the parties intended for Midwest's mortgage to encumber the Asbury Property, and not the Zollinger Property.

The parties do not dispute that the mortgage granted to Midwest was intended to be a second mortgage, behind EMC's. Shortly after the sheriff's sale held pursuant to the prosecution of EMC's foreclosure complaint, Mr. Kildow was able to obtain a loan from New Century Mortgage Corporation and redeem the Asbury Property by paying off EMC. In exchange for this loan, New Century was granted a first mortgage on the Asbury Property. There is a dispute of fact as to whether New Century knew of Midwest's lien at the time it extended credit to Mr. Kildow. Midwest has chosen, however, not to challenge the priority of New Century's lien.

Midwest also asserts, and Mr. Kildow does not dispute, that the last payment it received from Mr. Kildow was in April 1997. On January 7, 1998, Midwest commenced an action in Franklin County Common Pleas Court, seeking reformation of the mortgage and permission to foreclose on the Asbury Property.

### Kevin Kildow v. City Loan Financial Services (In re Kildow), Adv. Proc. No. 98–0114

On June 13, 1989, Mr. Kildow and Mrs. Kildow executed a promissory note in favor of City Loan in the principal amount of $68,431.54. The note was secured by a mortgage on the Asbury Property ("Asbury Mortgage"). The Asbury Mortgage was properly recorded, on a date that has not been disclosed. On December 15, 1989, Mr. Kildow and Mrs. Kildow executed a second promissory note in favor of City Loan in the principal amount of $21,140.44. This note was secured by a mortgage on the Zollinger Property ("Zollinger

Mortgage"). The Zollinger Mortgage was properly recorded on December 19, 1989.

The parties agree that on December 19, 1990, the Asbury Mortgage was paid in full, and that on December 24, 1990, by mistake, the Zollinger Mortgage was released. The parties also agree that, at the time it was released, the Zollinger Mortgage had not been paid in full. The Asbury Mortgage was released, but not until November 6, 1997. Mr. Kildow has admitted that he has not made payments to City Loan since April 1997.

The Defendants move for summary judgment pursuant to Fed.R.Civ.P. 56, which applies in bankruptcy court adversary proceedings pursuant to Fed. R.Bankr.P. 7056. Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

■ First, the Court must address the issue of a chapter 13 debtor's standing to seek avoidance of consensual security interests. The Court holds that a chapter 13 debtor may exercise the avoidance powers set forth in Chapter 5 of the Bankruptcy Code, subject to the limitations set forth in Sections 522(h) and (g)(1). Because the issue is a novel one, a thorough analysis of the relevant statutory provisions and caselaw is appropriate.

Section 1303 sets forth the powers granted specifically to debtors under Chapter 13 of the Bankruptcy Code, and provides that: "[s]ubject to any limitations

on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363($l$) of this title." Section 363 addresses the use, sale, or lease of property, and therefore, does not provide any statutory authority for the avoidance of transfers of property by chapter 13 debtors. Section 522(h), however, provides:

[t]he debtor may avoid a transfer of property of the debtor ... to the extent that the debtor could have exempted such property under (g)(1) of this section if the trustee had avoided such transfer, if—

(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a), or recoverable by the trustee under section 553 of this title; and

(2) the trustee does not attempt to avoid such transfer.

Section 103(a) renders chapter 5 of the Bankruptcy Code applicable in cases commenced under chapter 13. It follows, therefore, that a chapter 13 debtor who is able to show that the chapter 13 trustee has not acted to avoid a transfer pursuant to the Bankruptcy Code sections enumerated in Section 522(h) may be able to pursue such avoidance, but only to the extent the debtor could have claimed an exemption pursuant to Section 522(g)(1).[2] *See also, In re Brennan*, 208 B.R. 448, 451 (Bankr.S.D.Ill.1997).

Given that he seeks the avoidance of allegedly unperfected security interests in real property, Mr. Kildow must pursue such avoidance through Section 544, which states, in relevant part:

(1)(A) such transfer was not a voluntary transfer of such property by the debtor; and
(B) the debtor did not conceal such property...."

---

**2.** Section 522(g) provides: "[n]otwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers ... to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

(a) The trustee ... may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is avoidable by—

(3) a bona fide purchaser of real property ... from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

Neither the United States Supreme Court nor the Sixth Circuit Court of Appeals has ruled on the issue of whether a chapter 13 debtor may avoid a security interest pursuant to Section 544(a)(3). Two cases decided by bankruptcy courts within the Southern District of Ohio have addressed an analogous question, namely, whether a chapter 13 debtor has standing to avoid a preferential transfer under Section 547.

In *Hill v. Fidelity Financial Services (In re Hill),* 152 B.R. 204 (Bankr.S.D.Ohio 1993), Judge Waldron recognized that Section 522(h) affords a chapter 13 debtor the power to avoid a transfer of property, but held that this power was not completely unrestrained, and was subject to the limitations set forth in Sections 522(h) and 522(g)(1). *Hill,* 152 B.R. at 206–207. In *Fitak v. Cheers Communications Corp. (In re Fitak),* 93 B.R. 589 (Bankr.S.D.Ohio 1987), Judge Cole also held that a chapter 13 debtor may avoid a preferential transfer under Section 547, subject to the limitations set forth in Sections 522(h) and (g)(1). *Fitak,* 93 B.R. at 590.

The *Fitak* case is instructive because it specifically rejected a line of cases which held that a chapter 13 debtor did not have the ability to avoid transfers simply because avoidance powers are not set forth in Section 1303. *See In re Carter,* 2 B.R. 321, 322 (Bankr.D.Colo.1980); *Walls v. Appalachian Tire Products, Inc. (In re Walls),* 17 B.R. 701, 703 (Bankr.S.D.W.Va. 1982); *Mast v. Borgess Medical Center (In re Mast),* 79 B.R. 981, 982 (Bankr.

W.D.Mich.1987). This Court agrees that the rejection of this line of reasoning is appropriate, as it fails to take into account Section 103(a)'s incorporation of chapter 5's avoidance powers into chapter 13, and more importantly, because it fails to recognize Section 522's specific grant of limited avoidance powers to a debtor.

■ A significant and growing number of courts have recognized that a chapter 13 debtor may avoid transfers, but only subject to the restrictions set forth in Sections 522(h) and (g)(1), i.e., only to the extent necessary to protect an exemption in property that the debtor has not concealed and where the lien sought to be avoided is involuntary. *In re Bennett,* 35 B.R. 357, 359 (Bankr.N.D.Ill.1984); *Realty Portfolio, Inc. v. Hamilton (In re Hamilton),* 125 F.3d 292, 298 (5th Cir.1997); *LaBarge v. Benda (In re Merrifield),* 214 B.R. 362, 365 (8th Cir. BAP 1997); *Compton v. Compton (In re Compton),* 1998 WL 372659, *2 (Bankr.E.D.Pa. June 22, 1998); *Jardine v. Bennett's Eastside Paint and Glass (In re Jardine),* 120 B.R. 559, 561–562 (Bankr.D.Idaho 1990). This Court agrees with the courts which have concluded that chapter 13 debtors may avoid transfers, subject to the restrictions set forth in Sections 522(g)(1) and (h), because such a rule strikes the appropriate balance between the language of the Bankruptcy Code and the true role of a chapter 13 trustee. *See also, Freeman v. Eli Lilly Federal Credit Union (In re Freeman),* 72 B.R. 850, 854 (Bankr.E.D.Va.1987).

■ In *Hamilton, supra,* the Fifth Circuit favorably recognized a five-part test that can be used to determine whether a debtor has standing to avoid a transfer under Sections 522(h) and (g)(1). In order to permit a debtor to avoid a transfer of property, the Court must find that the debtor is able to satisfy all of the following elements:

(1) the transfer was not a voluntary transfer of property by the debtor;

(2) the debtor did not conceal the property;

(3) the trustee did not attempt to avoid the transfer;

(4) the debtor seeks to exercise an avoidance power usually used by the trustee, listed within § 522(h); and

(5) the transferred property is of a kind that the debtor would have been able to exempt from the estate if the trustee had avoided the transfer under one of the provisions in § 522(g).

*Hamilton,* 125 F.3d at 297, *citing DeMarah v. United States (In re DeMarah),* 62 F.3d 1248, 1250 (9th Cir.1995). *See also, Merrifield, supra,* 214 B.R. at 365.

Applying this test to the facts at hand, it becomes immediately clear that Mr. Kildow cannot prevail, because he is unable to satisfy the first element of the test, which would require the liens he seeks to avoid to be involuntary. Mr. Kildow has repeatedly admitted that he intended to grant City Loan, Midwest, and EMC the security interests he now seeks to avoid.

Some courts have also required chapter 13 debtors to demonstrate that any proposed avoidance will benefit creditors before permitting the debtor to proceed. *In re Chapman,* 51 B.R. 663, 666 (Bankr. D.D.C.1985). Whether Mr. Kildow intended for any funds that the mortgagees could have been required to disgorge to be paid directly to him, or whether he intended to use them for the benefit of his creditors is unclear. In his Complaints, Mr. Kildow asserted that any disgorged funds should be "reimbursed to the bankruptcy estate." At one point in his deposition, however, Mr. Kildow alluded that filing a new chapter 13 plan and pursuant to it paying the disgorged funds to his creditors may not have been his intended course of action. At another point in his deposition, Mr. Kildow appeared to believe that there existed at least a possibility that he may have been able to walk away "with a large sum of money." At still another point, Mr. Kildow specifically stated that "he shouldn't have to pay any more money,"

although he may have meant that he believed that he should not be required to pay City Loan, not the rest of his creditors, any more money. In any event, no modified plan has been proposed, and the Court has before it no more than Mr. Kildow's hint that his plan might have been modified to provide an increased percentage to his creditors, had he prevailed. These facts do not weigh in favor of awarding Mr. Kildow the relief he seeks.

Because no genuine issue of material fact exists as to whether these liens were consensual, as a matter of law Mr. Kildow is unable to satisfy the requirements of Sections 522(h) and (g)(1), and is unable to pursue the avoidance of EMC, Midwest and City Loan's liens.

■ Next, the Court must determine whether reformation of the EMC and Midwest mortgage deeds is appropriate. When analyzing the validity, priority, or extent of interests in property, state law controls. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Terlecky v. American Community Bank (In re Godwin),* 217 B.R. 540, 542 (Bankr.S.D.Ohio 1997).

Ohio Rev.Code § 2719.01 provides, in pertinent part, that: "[w]hen there is an omission, defect, or error in an instrument in writing ... by reason of the inadvertence of ... a party ... so that it is not in strict conformity with the laws of this state, the courts of the state may give full effect to such instrument ... according to the true, manifest intention of the parties thereto." The remainder of chapter 2719 describes the appropriate procedure for petitioning a state court for reformation of a legal instrument so that it conforms to the intent of the parties to the instrument. Ohio Rev.Code Ann. § 2719.02, *et seq.* Chapter 5301 of the Ohio Revised Code addresses the conveyance and encumbrance of real property, and specifically contemplates that a defective conveyance or encumbrance may be reformed, as provided by chapter 2719. Ohio Rev.Code Ann. § 5301.45.

Under Ohio law, then, where a mortgage of real property has been properly executed and recorded, a mistake in the legal description of the subject real property can be reformed to conform to the intent of the parties. *Strang v. Beach,* 11 Ohio St. 283, 287 (1860); *Neininger v. State,* 50 Ohio St. 394, 401, 34 N.E. 633 (1893); *Phoenix Concrete, Inc. v. Reserve–Creekway, Inc.,* 100 Ohio App.3d 397, 406, 654 N.E.2d 155 (1995). A party seeking reformation must establish that it is entitled to such remedy by clear and convincing evidence. *Davenport v. Widows and Heirs at Law of John Sovil,* 6 Ohio St. 459, 464 (1856). Further, reformation can be had not only by the parties, but by those in privity with the parties. *Strang, supra,* 11 Ohio St. at 287–288.

Mr. Kildow has admitted that the EMC and Midwest mortgage deeds contain defects in the legal descriptions of the subject real property. Mr. Kildow also has admitted that if these defects were corrected in the manners suggested by EMC and Midwest, the mortgages would then conform to the parties' intent when the mortgages were granted. None of the parties has asserted that these mortgages were not properly executed and recorded. Under these facts, the Court concludes both EMC and Midwest are entitled to the reformation of their mortgages to include the correct legal descriptions.

The Court must now determine whether City Loan is entitled to the reinstatement of its mortgage on the Zollinger Property. Mr. Kildow has admitted that it was the Asbury Mortgage which should have been released, not the Zollinger Mortgage. Further, Mr. Kildow has admitted that the Zollinger Mortgage was not paid off when it was released.

Under Ohio law, where a mortgage was inadvertently released, or released without consideration, the creditor holding that mortgage is entitled to its reinstatement. *Farmers Savings & Loan Co. v. Kline,* 92 Ohio App. 406, 409–410, 109 N.E.2d 525 (1951); *Transamerica Financial Services v. Stiver,* 61 Ohio App.3d 49, 53, 572 N.E.2d 149 (1989). Applying these well-settled principles to the undisputed facts at hand, this Court must find that, as a matter of law, City Loan is entitled to the reinstatement of its mortgage.

Finally, the Court must consider whether the defense of laches precludes reinstatement or reformation. "Laches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." *Connin v. Bailey,* 15 Ohio St.3d 34, 35, 472 N.E.2d 328 (1984) *quoting Smith v. Smith,* 107 Ohio App. 440, 443–444, 146 N.E.2d 454 (1957). To prevail upon an assertion of laches, a party must show: (1) unreasonable delay or lapse of time in asserting a right; (2) absence of an excuse for such delay; (3) knowledge, actual or constructive, of the injury or wrong; and (4) prejudice to the other party. *State ex rel. Meyers v. City of Columbus,* 71 Ohio St.3d 603, 605, 646 N.E.2d 173 (1995).

Mr. Kildow has asserted that the mortgagees should have known of the need for reformation or reinstatement by at least the point at which they filed proofs of claim in his bankruptcy case. According to Mr. Kildow, each of these creditors, by virtue of claiming security interests in his real property, were required to attach to their proofs of claim a copy of the documents evidencing their security interests, i.e., their promissory notes and mortgage deeds. Because these documents were defective, Mr. Kildow argues that the mortgagees should have recognized the need for their reformation or reinstatement and come forward.

If this Court were to accept Mr. Kildow's argument, it would punish the mortgagees for making the same mistake Mr. Kildow repeatedly has admitted making. Mr. Kildow also was able to examine the documents submitted in support of the mortgagees' proofs of claim, and he has admitted that it was not until shortly before the sheriff's sale that he became

aware of the defects in these documents. Thus, if the mortgagees' delay was unreasonable, then Mr. Kildow's delay was unreasonable as well. Further, a party is not required to seek the equitable remedy of reformation until it becomes aware that such remedy is required. *Ormsby v. Longworth,* 11 Ohio St. 653, 667 (1860). It is abundantly clear that since Mr. Kildow and the mortgagees discovered the defects in the mortgages, they have vigorously pursued the enforcement of their perceived rights.

There is no dispute as to whether Mr. Kildow or the mortgagees had actual notice of the deficiencies in the mortgages— it repeatedly has been admitted by both sides that they did not. Mr. Kildow also has argued that as of the filing of their proofs of claim, all of the mortgagees had constructive notice of the defects in their mortgages. If the mortgagees can be found to have had constructive notice, however, so can Mr. Kildow.

As to the fourth element of laches, Mr. Kildow has argued that, as a result of the failure of the mortgagees to pursue reformation or reinstatement on a more timely basis, he was forced to incur significant costs and attorney fees, suffered lost business opportunities, suffered a three-to-four-week delay in obtaining the New Century loan, and that he was forced to pay an additional two percentage points in interest on that loan once it was secured. Mr. Kildow has not produced any evidence to support his contentions as to these alleged injuries, and, because the failure to recognize the defects in the mortgages was mutual, Mr. Kildow's accrual of costs and other alleged harm was as much his fault as it was the mortgagees'. Further, Mr. Kildow has not explained why, after being served with EMC's amended foreclosure complaint, which specifically included a prayer for reformation, he failed to put on a defense, which could have served to mitigate his costs.

In sum, the undisputed facts of this case demonstrate that Mr. Kildow and the mortgagees all failed to recognize the defects in the mortgages. The undisputed facts also show, however, that once the parties became aware of these problems, they moved with equal vigor toward their resolution. As all of the parties are culpable, Mr. Kildow cannot show that he has been unfairly prejudiced. The Court finds that the defense of laches cannot preclude the enforcement of the equitable remedies of reinstatement or reformation by EMC, Midwest and City Loan.

The Court has before it no genuine issues of material fact. The pleadings, evidence, and other items in the record amply demonstrate that as a matter of law, Mr. Kildow is unable to avoid the consensual liens held by Midwest, EMC and City Loan. Further, even if he were legally empowered to seek the avoidance of these voluntarily-granted security interests, the mortgagees would be entitled to the equitable remedies of reformation or reinstatement.

Accordingly, the Motions for Summary Judgment filed by EMC, Midwest and City Loan are **GRANTED.**

**IT IS SO ORDERED.**