In re Robert D. PEED and Tonya C. Peed, Debtors.

William Todd Drown, Chapter 7 Trustee, Plaintiff,

v.

Countrywide Home Loans, Inc., Defendant.

Bankruptcy No. 07–58903.
Adversary No. 07–2938.

United States Bankruptcy Court, S.D. Ohio, Eastern Division at Columbus.

March 27, 2009.

526

William Todd Drown, Mount Vernon, OH, pro se.

Amelia A. Bower, Columbus, OH, Mark R. Lembright, Felty & Lembright, Co., LPA, Cleveland, OH, for Defendant.

### ORDER

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.

IT IS SO ORDERED.

*MEMORANDUM OPINION ON
MOTIONS FOR SUMMARY
JUDGMENT*

## I. Introduction

On November 1, 2007 ("Petition Date"), Robert D. and Tonya C. Peed filed a voluntary Chapter 7 petition. Prior to the Petition Date, Robert D. Peed ("Robert") executed two mortgages in the presence of two witnesses, one of whom also acted in the capacity of a notary public. The notary public's certificates of acknowledgment contained in both mortgages, however, fail to identify Robert as the person who acknowledged signing the documents. In fact, the acknowledgments contain blanks in the place where the name of the person acknowledging the signing of the mortgages should have been identified. Contending that the blanks in the acknowledgment clauses render the mortgages deficient under Ohio Revised Code § 5301.01, and thus not capable of being recorded, the Chapter 7 Trustee, William Todd Drown ("Trustee" or "Plaintiff"), seeks to avoid the mortgages. Countrywide Home Loans, Inc. ("Countrywide") disputes that the mortgages are invalid, arguing that because one witness to each mortgage was also the notary public, the acknowledgments were proper. The Court concludes that the mortgages are invalid because the certificates of acknowledgment do not reflect that the notary public properly certified Robert's acknowledgment. Accordingly, the Court grants summary judgment in favor of the Trustee.

## II. Jurisdiction

The Court has jurisdiction to hear and determine this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. The adversary proceeding is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(K).

## III. Procedural and Factual Background

By the complaint he filed initiating this adversary proceeding ("Complaint"), the Trustee seeks to avoid, pursuant to 11 U.S.C. § 544(a)(3), a first and second mortgage (Count One) and to preserve the mortgages for the benefit of the Debtors' bankruptcy estate under § 551 (Count Two). Following a pretrial conference, the parties agreed to a determination of the issues by dispositive motion. The matter is now before the Court on: (1) Trustee's amended motion for summary judgment ("Motion") (Doc. 12) and supplement ("Supplement") (Doc. 15); (2) Countrywide's brief in opposition and cross-motion for summary judgment (Doc. 13); (3) Countrywide's brief in opposition as to the second mortgage and cross-motion for summary judgment (Doc. 14); and (4) the Trustee's reply to Countrywide's opposition briefs and cross-motions (Doc. 16).

The parties did not file a stipulation of facts, but the pleadings and the documents filed in the Debtors' bankruptcy case establish that the relevant facts are not in dispute. Robert is the owner in fee simple of real property located at 942 S. Ashburton Road, Columbus, Ohio ("Property"). He received the Property by way of a general warranty deed signed August 26, 2004 and recorded on September 1, 2004 as Instrument Number 200409010205126, in the Franklin County, Ohio Recorder's Office. *See* Complaint, Ex. A. Debtor Tonya C. Peed purportedly owns a dower interest in and to the Property by virtue of her marriage to Robert.

On the Petition Date, the Debtors filed their schedules of assets and liabilities. On Schedule A (Real Property), they listed the Property with a value on the Petition Date of $60,000. On Schedule D (Creditors Holding Secured Claims), the Debtors listed Countrywide as having a first mort-

gage in the amount of $54,000 and a second mortgage in the amount of $13,275.34.

### A. Mortgage I

On or about August 26, 2004, Robert, then unmarried, executed a promissory note and Mortgage ("Mortgage I") in favor of America's Wholesale Lender encumbering the Property. Countrywide admits that it is the current holder of the promissory note and Mortgage I. *See* Countrywide Answer (Doc. 4) ¶ 5. Mortgage I was recorded on September 1, 2004 as Instrument Number 20040901205140 in the Franklin County, Ohio Recorder's Office. Page 14 of 15 of Mortgage I bears the signature of Robert as the borrower and includes the signatures of two witnesses.[1] One of the witness's signatures purports to be that of John P. Stapleton ("Stapleton"); the Court is unable to decipher the other witness's signature. Mortgage I contains the following notary public acknowledgment on page 15 of 15:

> This instrument was acknowledged before me this 26 of Aug, 2004, by
> [blank].

The notary public acknowledgment bears the signature of Stapleton as a Notary Public for the State of Ohio. *See* Supplement, Ex. D.

### B. Mortgage II

On or about August 26, 2004, Robert, then unmarried, executed a promissory note and an Open–End Mortgage (Line of Credit) ("Mortgage II") in favor of Countrywide Bank, a Division of Treasury Bank, N.A., encumbering the Property. Countrywide admits that it is the current holder of the promissory note and Mortgage II. *See* Countrywide Answer (Doc. 4) ¶ 8. Mortgage II was recorded on September 1, 2004 as Instrument Number 20040901205141 in the Franklin County, Ohio Recorder's Office. Mortgage II bears the signature of Robert as the mortgagor and includes the signatures of two witnesses. One of the witness's signatures purports to be that of Stapleton, and the other witness's signature is that of an individual named Sandra Weisner. Mortgage II contains the following notary public acknowledgment:

> This instrument was acknowledged before me this 26 of Aug 2004, by
> [blank]

The notary public acknowledgment bears the signature of Stapleton as a Notary Public for the State of Ohio. *See* Supplement, Ex. E.

### IV. Arguments of the Parties

The Trustee contends that he is entitled, as a hypothetical bona fide purchaser under § 544(a)(3), to avoid Mortgage I and Mortgage II. In support of his position, the Trustee argues that the signing of the mortgages was not properly acknowledged by the notary public, pointing out that each of the mortgages contains a certificate of acknowledgment that omits any identification of the person acknowledging the documents. The Trustee maintains that the mortgages were not properly certified, do not comply with the requirements of Ohio Revised Code § 5301.01(A) and, consequently, are defective. He submits that Mortgages I and II are invalid

---

1. Formerly, Ohio Revised Code § 5301.01 required that two witnesses attest to the signing of a mortgage. This section was amended effective February 1, 2002. *See* Ohio Rev. Code Ann. § 5301.01 (West 2002); *Suhar v. Land (In re Land)*, 289 B.R. 71, 74 (Bankr. N.D.Ohio 2003) ("The H.B. 279 version of § 5301.01 no longer requires two witnesses for proper mortgage execution."). Here, the mortgages at issue were executed in August 2004; thus, the two-witness requirement was not in effect at the time the parties executed these mortgages.

under Ohio law, not capable of being recorded, and thus, subject to avoidance.

Countrywide initially asserts that the Trustee is not entitled to summary judgment because he failed to attach to his motion either the originals or copies of Mortgage I or Mortgage II as is required under Fed.R.Evid. 902. The Court notes, however, that Countrywide attached a copy of Mortgage I and Mortgage II to its cross-motions. And the Trustee corrected this evidentiary defect by supplementing the Motion and providing the Court with certified copies of both mortgage documents. *See* Supplement, Exs. D and E. Countrywide has not disputed the authenticity of the certified copies supplied by the Trustee. *See, e.g., Geygan v. Chase Manhattan Mortgage Corp. (In re Thomas),* 2008 Bankr.LEXIS 1679 at *2 n. 1 (Bankr. S.D.Ohio May 29, 2008) ("Chase argues that the copies of the mortgages attached to the Trustee's summary judgment motion are unauthenticated. However, Chase attached identical copies to its summary judgment motion. Therefore, the Court does not deem authentication to be a material issue."). Thus, the Court deems this point moot.

Countrywide's second argument—that Mortgage I and Mortgage II are valid—rests on the Ohio Supreme Court case of *Wayne Building & Loan Co. v. Hoover,* 12 Ohio St.2d 62, 231 N.E.2d 873 (1967). According to Countrywide, under *Hoover,* when a notary public also acts as a witness to the signing of a mortgage, as is the case here, he essentially acknowledges the signing for purposes of § 5301.01. Countrywide urges the Court to find that the mortgages were capable of being recorded, provided adequate notice to third parties, and therefore may not be avoided by the Trustee.

## V. Legal Analysis

### A. Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), made applicable in this adversary proceeding by Fed. R. Bankr.P. 7056, summary judgment is appropriate where "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Novak v. MetroHealth Med. Ctr.,* 503 F.3d 572, 577 (6th Cir.2007). In reviewing a motion for summary judgment, the Court views the evidence, all facts, and any inferences drawn therefrom, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Novak,* 503 F.3d at 577; *Skowronek v. Am. S.S. Co.,* 505 F.3d 482, 484 (6th Cir.2007) (the court "must draw all reasonable inferences in favor of the nonmoving party").

" '[A]s to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.' " *Niecko v. Emro Mktg. Co.,* 973 F.2d 1296, 1304 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " *Novak,* 503 F.3d at 577 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Ransier v. Standard Fed. Bank (In re Collins),* 292 B.R. 842, 845 (Bankr. S.D.Ohio 2003).

The filing of cross-motions does not alter the standards governing the determination of summary judgment motions. *See Taft Broad. Co. v. United States,* 929 F.2d 240,

248 (6th Cir.1991); *Collins,* 292 B.R. at 845. But " 'cross motions for summary judgment do authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties.' " *Schafer v. Rapp (In re Rapp* ), 375 B.R. 421, 428 (Bankr. S.D.Ohio 2007) (quoting *Greer v. United States,* 207 F.3d 322, 326 (6th Cir.2000)).

Whether a certificate of acknowledgment complies with Ohio Revised Code § 5301.01 is a question of law. *See Drown v. GreenPoint Mortgage Funding, Inc. (In re Leahy),* 376 B.R. 826, 828 (Bankr. S.D.Ohio 2007). Accordingly, this adversary proceeding is ripe for summary judgment.

### B. Defective Acknowledgment Clauses

The Trustee asserts that because both notary public acknowledgments are blank and do not reflect that Robert appeared before the notary public as required by Ohio Revised Code § 5301.01, Mortgage I and Mortgage II are invalid, unperfected and avoidable under the "strong-arm" powers granted to him by 11 U.S.C. § 544. He seeks to preserve the avoided transfers for the benefit of the estate pursuant to 11 U.S.C. § 551.[2]

■ Section 544(a)(3) states that "[t]he trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—... (3) a bona fide purchaser of real property...." 11 U.S.C. § 544(a)(3). The Court must look to state law to determine whether the mortgages

are valid. *See Kildow v. EMC Mortgage Corp. (In re Kildow),* 232 B.R. 686, 693 (Bankr.S.D.Ohio 1999) (citing *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). In Ohio, "[o]nly properly executed mortgages take priority over a bona fide purchaser...." *Kovacs v. First Union Home Equity Bank (In re Huffman),* 408 F.3d 290, 293 (6th Cir.2005); *see also Helbling v. Mortgage Elec. Registration Sys., Inc. (In re Cala),* 2008 WL 2001761 at \*3 (Bankr.N.D.Ohio May 6, 2008) ("Ohio law provides that 'an improperly executed mortgage does not put a subsequent bona fide purchaser on constructive notice.' " (quoting *Simon v. Chase Manhattan Bank (In re Zaptocky),* 250 F.3d 1020, 1028 (6th Cir.2001))).

■ Section 5301.01 establishes the requirements for a properly executed mortgage and provides, in relevant part, as follows:

> A deed, mortgage, land contract ... or lease of any interest in real property and a memorandum of trust ... shall be signed by the grantor, mortgagor, vendor, or lessor in the case of a deed, mortgage, land contract, or lease or shall be signed by the settlor and trustee in the case of a memorandum of trust. The signing shall be acknowledged by the grantor, mortgagor, vendor, or lessor, or by the settlor and trustee, before a judge or clerk of a court of record in this state, or a county auditor, county engineer, notary public, or mayor, who shall certify the acknowledgment and subscribe the official's name to the certificate of acknowledgment.

---

**2.** Section 551 of the Bankruptcy Code states: "Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title,

is preserved for the benefit of the estate but only with respect to property of the estate." 11 U.S.C. § 551.

Ohio Rev.Code Ann. § 5301.01(A) (West 2009). Thus, in order to comply with the statute, (1) a mortgage "must be signed by the mortgagor; (2) the signing of the mortgage must be acknowledged before a notary public; (3) the notary public must certify th[e] acknowledgment; and (4) the notary public must subscribe his name to the certificate of acknowledgment." *See Leahy*, 376 B.R. at 832. *See also Thomas*, 2008 Bankr.LEXIS 1679 at \*7–8 ("In Ohio, the grantor of a mortgage must sign the mortgage and acknowledge the signing. Additionally, the acknowledgment must be certified by a notary or a specified public official." (citation omitted)).

█ In addition to the requirements of § 5301.01, the Court also must review Ohio Revised Code §§ 147.53, 147.54 and 147.55, which "clearly require some identification of the person whose signature is being acknowledged." *Geygan v. World Savs. Bank (In re Nolan)*, 383 B.R. 391, 396 (6th Cir. BAP 2009) (internal quotation marks omitted). Section 147.53 states as follows:

The person taking an acknowledgment shall certify that:

(A) The person acknowledging appeared before him and acknowledged he executed the instrument;

(B) The person acknowledging was known to the person taking the acknowledgment, or that the person taking the acknowledgment had satisfactory evidence that the person acknowledging was the person described in and who executed the instrument.

Ohio Rev.Code Ann. § 147.53 (West 2009). *See Terlecky v. Countrywide Home Loans, Inc. (In re Baruch)*, Adv. Pro. No. 08–2069 (Bankr.S.D.Ohio Fed.23, 2009) (Doc. 46) at 13–14 ("[T]he Acknowledgment Clause must identify the 'person acknowledging' the acknowledgment. . . . An acknowledgment clause containing nothing relative to the mortgagor's identity is insufficient;

rather, an acknowledgment clause must either identify the mortgagor by name or contain information that permits the mortgagor to be identified by reference to the mortgage. . . . [The Acknowledgment Clause here] does not indicate that *anyone* acknowledged the execution of the Mortgage." (footnote omitted)).

The Ohio Revised Code provides an acceptable *form* certificate of acknowledgment. This form clearly contemplates that the notarial certification is to include the name of the person acknowledging the document.

The forms of acknowledgment set forth in this section may be used and are sufficient for their respective purposes under any section of the [Ohio] Revised Code. . . . The authorization of the forms in this section does not preclude the use of other forms.

(A) "For an individual acting in his own right:

State of _____

County of _____

The foregoing instrument was acknowledged before me this (date) by **(name of person acknowledged.)**

(Signature of person taking acknowledgment) (Title or rank) (Serial number, if any)". . . .

Ohio Rev.Code Ann. § 147.55(A) (emphasis added). Thus, when an acknowledgment does not recite the name of the mortgagor, "the acknowledgment is defective. . . ." *Nolan*, 383 B.R. at 396. *See also Smith's Lessee v. Hunt*, 13 Ohio 260, 269 (1844) (holding that court was unable to infer name of grantor when acknowledgment was blank as to the grantor and, thus, the mortgage was defective and did not convey title); *Cala*, 2008 WL 2001761 at \*6 ("In order to properly certify an acknowledgment, the notary must provide some indication that the party actually appeared.").

■ The notary public acknowledgment clauses in both Mortgage I and Mortgage II track the language of the suggested form set forth in § 147.55(A). The acknowledgment clauses also meet the first and fourth requirements in § 5301.01— there is no dispute that Robert executed Mortgage I and Mortgage II and that Stapleton subscribed his name as a notary public to the mortgages. A question remains, however, as to whether the acknowledgments satisfy the second and third prongs of § 5301.01. The Court must determine whether the signing was acknowledged before a notary public and whether the notary public certified the acknowledgments. To the extent a mortgage fails to meet one of these requirements, the document is invalid unless the notarial certification substantially complies with § 5301.01. *See Thomas,* 2008 Bankr.LEXIS 1679 at *15 ("Acknowledgment and certification are two separate requirements under § 5301.01."); *Cala,* 2008 WL 2001761 at *6 (Section 5301.01 "and the Ohio Supreme Court case law interpreting it require two separate acts— (1) the mortgagor signing the document in the presence of a notary or telling the notary that the signature is indeed his; and (2) the notary certifying that acknowledgment—and fulfilling one act alone is not sufficient.").

## C. *Wayne Building & Loan Co. v. Hoover*

■ The parties do not dispute that Stapleton signed Mortgage I and Mortgage II both as a witness and the notary public. Countrywide argues that, because Stapleton acted as a witness and notary public, *Hoover* resolves the acknowledgment defect issue—that is, whether there was a proper acknowledgment of the signing of Mortgages I and II—in its favor. And, Countrywide further contends that *Hoover* provides an exception to the requirement that a mortgage must substantially comply with § 5301.01. Countrywide rejects two cases on which the Trustee relies—*Nolan* and *Cala*—as inapplicable because those courts did not squarely address the question of whether an acknowledgment is sufficient when a witness to the signing of the mortgage is also the notary public. The Trustee argues that *Hoover* is distinguishable from the present case. He points out that, in contrast to this case, the challenge to the validity of the mortgage in *Hoover* did not involve a defective acknowledgment but, instead, went to the question of whether the mortgage had in fact been acknowledged in the first instance. In *Hoover,* the acknowledgment included the mortgagors' names; it was not blank like the acknowledgment clauses in Mortgage I and Mortgage II. And he also notes that the notary public in *Hoover* did, in fact, certify the acknowledgment.

The Ohio Supreme Court in *Hoover* was asked to determine "whether the mere signing in the presence of a notary public may amount to the acknowledgment required by [Ohio Revised Code] Section 5301.01 . . . ." *Hoover,* 231 N.E.2d at 875. The version of § 5301.01 in effect at the time required a mortgagor to acknowledge his or her signing before two witnesses who were required to attest to the signing and also sign the attestation. In addition, the statute required the signing to be acknowledged before a notary public who was required to certify the acknowledgment. *Id.* at 874 (citing former version of Ohio Rev.Code § 5301.01). The certificate of acknowledgment in *Hoover* stated, in part, as follows: " 'Before me, a Notary Public ... personally appeared the above named Lewis F. Hoover and Helen Hoover, husband and wife and acknowledged the foregoing conveyance to be their voluntary act and deed. . . . ' " *Id.* The mortgagors were clearly identified by name in the

notarial acknowledgment. The problem thus centered on the notary public's failure to say anything to the mortgagors regarding their signatures. *Id.* at 875 (citing the lower court's finding that "no words were spoken by ... Forrer as a notary public to ... [the Hoovers] regarding their signatures; [only] that they simply were asked to sign the loan contract and mortgage at the places indicated" (internal quotation marks omitted)). The Ohio Supreme Court concluded that

> where a witness has seen the signing, there has necessarily been an "acknowledgment" of such "signing" by the signer in his presence. Thus, it appears that the statute considers that one who witnesses a signing necessarily witnesses an acknowledgment of such signing. It follows that, where a notary public witnesses a signing by the mortgagor, there has been an acknowledgment of such signing before such notary public. . . .

*Id.* at 876. The *Hoover* court thus concluded that the mortgage had been "acknowledged" when the notary public also acted as a witness. But the question of whether the notary public properly certified the acknowledgment was not before the court.

Several courts since have discussed *Hoover* in cases where the challenge to the mortgage was based on an alleged deficient acknowledgment certification. For instance, in *Field v. Wheeler,* 2006 WL 1645214 at *3 (S.D.Ohio June 12, 2006), the District Court rejected the application of *Hoover* and stated as follows:

> [I]t appears that in *Hoover* the mortgagors argued that their acknowledgments were invalid because the notary failed to verbally ask them before signing whether the conveyance was their voluntary act and deed. Thus, *Hoover* appears to stand for nothing more than the com-

mon sense proposition that a verbal acknowledgment need not precede a written acknowledgment in order to comply with § 5301.01. As indicated, however, *Hoover* is distinguishable because the notary actually certified both mortgagors' acknowledgments whereas in this case the notary did not certify the Debtor's acknowledgment.

*See also Thomas,* 2008 Bankr.LEXIS 1679 at *14–15 ("*Hoover* did not involve an alleged defect with a certificate of acknowledgment. The issue in *Hoover* was whether a grantor must do something more than sign the mortgage in the presence of the notary to acknowledge execution of the same. . . . *Hoover* concluded that signing the mortgage in the presence of the notary without saying anything constitutes an acknowledgment. . . . [E]ven if [the mortgagor] acknowledged execution of the mortgages, there is still no certification of such acknowledgment. Acknowledgment and certification are two separate requirements under § 5301.01."); *Cala,* 2008 WL 2001761 at *4 ("*[Hoover]* merely provides that a mortgagor may acknowledge his signing in one of two ways. . . . *Hoover* says nothing regarding the notary's obligation to certify the mortgagor's acknowledgment."). But other courts have reached a contrary result, concluding that it is not proper to question the veracity of the acknowledgment when the witness also acts as the notary public. *See Field v. ABN AMRO Mortgage Group, Inc. (In re Wheeler),* 2005 WL 4057841 at *3 (Bankr.S.D.Ohio July 21, 2005) ("This Court agrees with the rationale of *Fryman* that it would be contradictory to discredit the notary's acknowledgment when the notary's actual witnessing of the signing of the mortgage by the debtor is unchallenged."), *aff'd,* 2006 WL 1645214 (S.D.Ohio June 12, 2006); *Menninger v. First Franklin Fin. Corp. (In re Fryman),* 314 B.R. 137, 139 (Bankr.S.D.Ohio

2004) (failing to cite *Hoover*, but stating that [because] "[t]he witnessing of the mortgage has not been challenged[,][i]t would be inconsistent to 'discredit' the notary's acknowledgment when the notary's witnessing is accepted to have been proper").

The Court finds *Hoover* inapplicable for two reasons: (1) there, the notary public certification identified and named the mortgagors; and (2) the issue before the *Hoover* court related to the mortgagor's actual acknowledgment, not the notary public's certification of the acknowledgment. Having concluded that *Hoover* is not controlling, the Court looks to *Smith's Lessee* for guidance in determining whether the certifications of acknowledgment in Mortgage I and in Mortgage II are defective.

In *Smith's Lessee*, Ezekiel Folsom delivered a mortgage deed to the lessor of the plaintiff—Smith's Lessee. The certificate of acknowledgment, dated February 21, 1835, was set forth as follows: "Personally appeared _____, who acknowledged that he did sign and seal the foregoing instrument, and that the same is his free act and deed. WM BURTON, *Justice of the Peace.*" *Smith's Lessee*, 13 Ohio at 260. Mr. Burton also was a witness to the deed. *Id.* at 262 ("see the name of William Burton, as a witness, and see his signature to the acknowledgment"). Subsequently, Mr. Folsom conveyed the same property to Ambrose Anthony who later conveyed the land to defendant John E. Hunt. In 1840, Smith's Lessee filed a bill of equity against Mr. Folsom ·to sell the property and satisfy the mortgage. Smith's Lessee was the purchaser at the judicial sale. *Id.* at 260. At issue was whether Smith's Lessee held any legal title to the property after the sale given the purportedly defective certificate of acknowledgment in the February 21, 1835

conveyance. *Id.* at 268. The Ohio Supreme Court evaluated the certificate of acknowledgment to determine if it complied with the requirement that "such acknowledgment [must] be certified by the magistrate or person before whom it is made." *Id.* The Court asked whether Mr. Folsom and the "blank" were "synonymous." *Id.* Based on the evidence presented, the Court could not infer that Mr. Folsom was in fact the grantor, *see id.*, and held that there was "no legal estate . . . conveyed by this defectively executed mortgage. . . ." *Id.* at 269.

The parties here do not dispute that Stapleton signed both Mortgage I and Mortgage II as a witness and as the notary public. Likewise, from the pleadings, it does not appear that the Trustee is disputing the . actual acknowledgments by Robert. Rather, the problem lies with Stapleton's faulty certification—caused by his failure to identify Robert in the notarial acknowledgments. And based on *Smith's Lessee*, this omission—even when the notary public and the witness are the same person—renders the mortgages defective and thus invalid as against third parties, such as a subsequent bona fide purchaser.

### D. Mortgage I and Mortgage II Do Not Substantially Comply with § 5301.01 and are Invalid.

█ Notwithstanding the omissions in an acknowledgment clause, a mortgage may otherwise substantially comply with § 5301.01 and thus be deemed valid. In *Dodd v. Bartholomew*, 44 Ohio St. 171, 5 N.E. 866 (1886), the Ohio Supreme Court was asked to determine whether a certificate of acknowledgment that contained scrivener's errors was fatally deficient so as to render the mortgage invalid. The Court enunciated the following principle of construction:

It is a well-settled principle, applicable to the construction of deeds and other instruments, that all their parts are to be construed together, and the meaning ascertained from a consideration of each and every part; and, in the application of this rule, it is uniformly held that a false description, whether of the subject-matter or of the parties, does not vitiate the instrument, where the error appears upon its face, *and the instrument supplies within itself the means of making the correction.*

*Dodd,* 5 N.E. at 867 (emphasis added). *See also Fryman,* 314 B.R. at 138 ("[T]he court must review the nature of the error and the balance of the document to determine whether or not the 'instrument supplies within itself the means of making the correction.'" (quoting *Dodd,* 5 N.E. at 867)). A mortgage may provide the means of correcting a deficiency in a variety of ways. For example, in *Fryman,* the deficiency in the acknowledgment clause included the preprinted name of one mortgagor, but omitted the name of the other. *See id.* In determining that the mortgage corrected the defect and substantially complied with § 5301.01, the court considered that the mortgage included the names of both mortgagors, both mortgagors initialed each page of the mortgage, and the acknowledgment clause included the plural pronouns "they" and "their," which were handwritten into the clause by the notary public. *See id.* at 139.

In *Leahy,* this Court held that a mortgage failed to supply the means necessary to correct a deficiency—where the mortgagor's name was omitted from the acknowledgment clause—and thus did not substantially comply with § 5301.01.

[T]he acknowledgment clause at issue is problematic for four reasons. First, the clause leaves blank the name of the person who appeared before the notary.

Second, the claim references "the person(s)" with no striking out of the (s) to indicate that the person who signed was a single individual. In other words, the word "person" with the (s) after it can lead to the conclusion that it referred to plural persons, not simply a singular individual. Third, the clause references a name "subscribed to the foregoing instrument." The acknowledgment is on a page completely separate from any other page of the Mortgage. Arguably, the acknowledgment clause could relate to a different instrument and a signature of someone else. And, finally, the clause states that "he/she/they executed" the instrument without circling or otherwise designating the appropriate pronoun.

*Leahy,* 376 B.R. at 828–29. Similarly, in *Wheeler,* the bankruptcy court concluded that the mortgage did not substantially comply with § 5301.01 because "there [was] no language contained within the defendant's acknowledgment clause that indicate[d] that the notary acknowledged the signature of anyone other than the non-debtor spouse...." *Wheeler,* 2005 WL 4057841 at *3 (noting that notary public also served as a witness). The mortgage also did not include any evidence that the debtor was a part of the loan transaction. *See id. See also Thomas,* 2008 Bankr.LEXIS 1679 at *13 ("If a certificate of acknowledgment omits the name of one or more grantors, it is clear that the mortgage was defectively executed as to the omitted grantors unless the certificate contains additional identifying language such as 'the grantors in the above-named instrument.'").

 The Court concludes that the acknowledgment certifications in Mortgages I and II are deficient for several reasons. First, the certifications leave blank the name of the person who appeared before the notary public. Based on *Smith's Les-*

*see*, this fact alone renders the mortgages invalid. Second, Mortgage I contains Robert's initials on pages 1 through 13. But page 14 is the page on which Robert executed the mortgage, and it does not contain a place for his initials. And on page 15 of Mortgage I there is an absence of his initials despite a place designated for initialing. Finally, Mortgage II includes Robert's initials on pages 1 through 4, but omits his initials on page 6 in the space provided for initialing. Page 5 is the page on which Robert executed Mortgage II and it does not include a place for initials. The cumulative effect of these deficiencies, which are not corrected within the documents, convinces the Court that Mortgages I and II do not substantially comply with § 5301.01

In *Cala*, both mortgagors initialed the page that included the certificate of acknowledgment. The court, however, "[v]iewing the initials in the light most favorable to [the mortgagee]" concluded that since "the initials [we]re separate from the acknowledgment"—appearing at the bottom of the acknowledgment page—that excluded one of the mortgagor's names, the mortgage did not satisfy § 5301.01. *Cala*, 2008 WL 2001761 at *6. The fact that Robert's name and initials are missing from the acknowledgment pages of each mortgage bolsters the Court's conclusion that Mortgages I and II are not in substantial compliance with § 5301.01. But even if Robert had initialed the last pages of Mortgage I and Mortgage II, the Court would nevertheless find noncompliance. *See Baruch*, Adv. Pro. No. 08–2069 (Doc. 46) at 15 ("Similarly, the Debtor's initialing the Mortgage on the bottom of its other pages, including the page on which the Acknowledgment Clause appears, is insufficient because the initials, like the Debtor's printed name and signature, were not made part of the Acknowledgment Clause."). And finally, the blank acknowledgment clauses do not designate whether an individual or more than one person acknowledged the mortgages. So it is simply not clear—from a review of the four corners of the documents—whether these acknowledgment certifications specifically apply to Mortgage I and/or Mortgage II.

Based on these factors, the Court concludes that Stapleton did not properly certify Robert's acknowledgment of Mortgage I or Mortgage II, and the documents do not supply the means for correcting the deficient certifications. Thus, the Court finds that Mortgages I and II do not substantially comply with the requirements in § 5301.01 and are invalid.

### E. Trustee as a Bona Fide Purchaser

 Given the deficiency in the certifications of acknowledgment, neither Mortgage I nor Mortgage II were properly executed. As stated in *Mortgage Electronic Registration Systems v. Odita*, 159 Ohio App.3d 1, 822 N.E.2d 821, 825 (Ohio Ct.App.2004), "[a] defectively executed mortgage is not entitled to record, and even if it is recorded, the defective mortgage is treated as though it has not been recorded." Only a mortgage that is properly executed takes priority over a bona fide purchaser, such as a trustee in bankruptcy. *See Huffman*, 408 F.3d at 293; *see also Logan v. Kingston Nat'l Bank (In re Floater Vehicle, Inc.)*, 105 B.R. 420, 421 (Bankr.S.D.Ohio 1989) (concluding that "a defectively-executed mortgage is not entitled to record and is not binding as to a trustee in bankruptcy in his capacity as a hypothetical lien creditor/bona fide purchaser"). And "an improperly executed mortgage does not put a subsequent bona fide purchaser on constructive notice." *Zaptocky*, 250 F.3d at 1028. *See also Logan v. Universal Credit 1 Union, Inc. (In re Bozman)*, 365 B.R. 824, 829–30 (Bankr.

S.D.Ohio 2007), *aff'd*, 2007 WL 4246279
(S.D.Ohio Nov.28, 2007) (finding that im-
properly executed mortgage did not put
trustee as bona fide purchaser on con-
structive notice).

In sum, given the notary public's failure
to properly certify the acknowledgments,
the Trustee has established that Mortgage
I and Mortgage II are not capable of being
recorded because they fail to substantially
comply with § 5301.01. Thus, the mortgag-
es do not put a subsequent bona fide pur-
chaser—here, the Trustee—on construc-
tive notice. Accordingly, the Trustee is
entitled to avoid *Mortgage I and Mortgage
II* as a bona fide purchaser under
§ 544(a)(3) and to preserve the mortgages
for the benefit of creditors of this bank-
ruptcy estate pursuant to § 551.

## VI. Conclusion

For the foregoing reasons, the Court
**GRANTS** the Motion and **DENIES** Coun-
trywide's cross-motions for summary judg-
ment. The Court will enter a separate
judgment entry in accordance with this
memorandum opinion.

**IT IS SO ORDERED.**